United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 8, 2004**

Charles R. Fulbruge III
Clerk

REVISED June 22, 2004

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-60759
_____

AMANDA S MAY

                              Plaintiff - Appellee

        v.

HIGBEE COMPANY, doing business as Dillard's; WILLIAM CARR

                              Defendants - Appellants

_____

Appeal from the United States District Court
for the Southern District of Mississippi
_____

Before KING, Chief Judge, and REAVLEY and EMILIO M. GARZA,
Circuit Judges.

KING, Chief Judge:

        Plaintiff Amanda May sued her employer Higbee Co. (d/b/a

Dillard's) and a supervisor for employment discrimination under

Title VII.  The defendants moved to compel arbitration and to

stay the judicial proceedings.  The district court denied the

motion, ruling that May had not assented to her employer's

arbitration program.  Concluding that the district court should

have ordered arbitration pursuant to the parties' binding agreement, we reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

May began working at a Dillard's department store in June 1990, and she later rose to become the sales manager of the store's men's department. May alleges that she was qualified to be promoted to higher managerial positions but was repeatedly passed over in favor of male employees. The particular employment action that precipitated this lawsuit occurred in March 2002, when May was denied a promotion to the position of assistant store manager. According to May, her supervisor, William Carr, refused to promote May into higher-level management positions because she was a woman and a mother. May filed suit in the district court in June 2002, claiming that Dillard's and Carr had discriminated against her on the basis of her sex in violation of Title VII, 42 U.S.C. § 2000e et seq. (2000).

The defendants later filed a motion to compel arbitration and to stay the judicial proceedings. The motion was based on the fact that, in June 2001, the company had instituted a compulsory arbitration program for most employment-related disputes. May admits to receiving two documents relating to the arbitration program. One document, titled "Rules of Arbitration" (the "Rules"), states that both the company and the employee "agree that the procedures provided in these Rules will be the

2

sole method used to resolve any covered dispute arising between them." The Rules go on to list employment discrimination claims as among the covered disputes. Although the Rules state that they apply to disputes that arise between employees and "the Company," the last page of the document defines "the Company" broadly, so that the term includes the corporate entity and its managers and employees, such as Carr.

The second document that May received was a one-page form titled "Acknowledgment of Receipt of Rules for Arbitration" (the "Acknowledgment Form"). The Acknowledgment Form included the following language in readily legible type:

> Effective immediately, all employees . . . shall be subject to the RULES OF ARBITRATION (the "Rules") described below. Employees are deemed to have agreed to the provisions of the Rules by virtue of accepting employment with the Company and/or continuing employment therewith.

Below this paragraph, and immediately above the signature line, was text stating that "I acknowledge receipt of the agreement to arbitrate certain claims and rules of arbitration." May admits that she signed such an Acknowledgment Form.[1] As a supervisory employee, May was also involved in distributing the documents to lower-level employees and in obtaining their signatures.

---

[1] The actual form that May signed could not be located in her personnel file and was not submitted in support of the defendants' motion. Nonetheless, May admitted in her deposition that she signed a document titled "Acknowledgment of Receipt of Rules for Arbitration," and she did not offer any evidence suggesting that the form she signed differed from the examples of the Acknowledgment Form that appear in the record.

3

May filed a response to the defendants' motion, in which she claimed, <u>inter alia</u>, that she had not actually agreed to arbitrate but had instead only acknowledged that she had received certain documents.  Her response further stated that Carr had told her that arbitration would be optional for employees like her and had also told her that the Acknowledgment Form only indicated that she had received the Rules, nothing more.

The district court denied the defendants' motion in a written opinion and order dated August 26, 2003.  The court agreed with May that there was no binding agreement to arbitrate because May never assented to be bound by the company's arbitration procedures.  While noting that parol evidence is generally inadmissible to vary the terms of a written contract, the district court concluded that parol evidence was allowable in this case because the acknowledgment form was ambiguous.  The form was ambiguous, in the district court's view, because it was internally inconsistent: The title of the form and the text immediately above the signature line stated only that May acknowledged receiving the Rules, but the language in the body of the form (language that we quoted above) stated that May agreed to be bound by the Rules.  To resolve the ambiguity regarding what May had agreed to, the district court looked to May's evidence about Carr's contemporaneous statements.  Since the defendants had not denied May's account of Carr's statements, the district court credited May's evidence and concluded that May had

4

not agreed to compulsory arbitration. The court further held that the defendants' motion to compel arbitration should be denied because an ambiguous agreement should be construed against its drafter, here Dillard's.

The defendants timely filed a notice of appeal and, on the same day, also filed a motion to certify the district court's decision for interlocutory appeal under 28 U.S.C. § 1292(b).[2] The district court denied the motion to certify an interlocutory appeal. The defendants have argued that the motion to certify was unnecessary and was undertaken only out of caution, since (according to the defendants) they can pursue an interlocutory appeal as of right under 9 U.S.C. § 16(a)(1).[3] May has filed a motion to dismiss the appeal for want of appellate jurisdiction.[4]

---

[2] 28 U.S.C. § 1292(b) provides, in pertinent part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

[3] The defendants took the same position below, writing in their motion to certify an appeal that certification was sought only as a precautionary measure.

[4] May also filed a motion to supplement the record on appeal with certain discovery materials that were not presented to the district court. Ordinarily, we will not permit a litigant to supplement the record with material that was not before the district court. See Peoples Nat'l Bank v. Comptroller of the Currency, 362 F.3d 333, 338 n.3 (5th Cir. 2004). May's motion

## II. APPELLATE JURISDICTION

Perhaps the most hotly contested issue in this case is the threshold question of whether we have jurisdiction to entertain this appeal.  The defendants do not contend that the district court's decision to deny their arbitration motion is a decision that would ordinarily be appealable as a final order.  The defendants do point out, however, that Congress has expressly authorized us to hear certain arbitration-related interlocutory appeals.  The jurisdictional statute provides, in relevant part:

> (a) <u>An appeal may be taken from</u>--
>
> > (1) an order--
> >
> > > (A)  refusing  a  stay  of  any  action under section 3 of this title,[5]

---

provides no explanation for why the items were not presented below, and in any event we do not find them relevant to our disposition of the case.  We will therefore deny the motion.

In addition, the defendants filed a motion to certify certain questions to the Mississippi Supreme Court.  We find, however, that we are able to dispose of this case in a manner that does not implicate any unsettled questions of state law that would justify certification.

[5]     Section 3, which concerns stays of judicial proceedings pending arbitration, provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action . . . .

6

(B) denying a petition under section 4 of this title to order arbitration to proceed,[6]

. . .

(3) a final decision with respect to an arbitration that is subject to this title.

(b) Except as otherwise provided in section 1292(b) of title 28, <u>an appeal may not be taken from</u> an interlocutory order--

(1) granting a stay of any action under section 3 of this title;

(2) directing arbitration to proceed under section 4 of this title . . . .

9 U.S.C. § 16 (2000) (emphasis added). Enacted in 1988, section 16 reinforces the congressional policy in favor of arbitration by making anti-arbitration decisions widely appealable even when interlocutory, but making pro-arbitration decisions generally not appealable unless final.[7] <u>See</u> <u>Green Tree Fin. Corp.-Ala. v. Randolph</u>, 531 U.S. 79, 86 (2000); <u>Forsythe Int'l, S.A. v. Gibbs</u>

---

[6] Section 4, which involves requests to compel arbitration, provides as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

[7] Section 16 was originally numbered § 15, but it was renumbered in 1990.

Oil Co. of Tex., 915 F.2d 1017, 1020 (5th Cir. 1990); 19 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 201.31[3] (3d ed. 2004).

The defendants moved the district court to compel arbitration and stay the judicial proceedings under 9 U.S.C. §§ 3 and 4, but the district court denied their motion. That denial is the type of decision for which § 16(a)(1) would appear to confer the right to bring an interlocutory appeal. But May contends that the district court's decision is not immediately appealable, via § 16(a)(1) or otherwise, and she cites in support of her view the recent decision of this court in Cerveceria Cuauhtemoc Moctezuma S.A. de C.V. v. Montana Beverage Co., 330 F.3d 284 (5th Cir. 2003) (per curiam).

The parties in Cerveceria had entered into a distributorship agreement. The contract did not contain an arbitration clause, though it did incorporate by reference the entirety of the Texas Beer Industry Fair Dealing Law (BIFDL), TEX. ALCO. BEV. CODE ANN. §§ 102.71–.81 (Vernon 1995). One particular section of the BIFDL provides that certain disputes "may, at the option of either [party]" be submitted to an arbitration panel. A dispute led one of the parties to file suit in the district court, and in response the other party moved the district court to stay the proceedings and compel arbitration under 9 U.S.C. §§ 3 and 4. The district court refused, finding that there was no binding agreement to arbitrate. This court agreed that there was no binding agreement to arbitrate; the court concluded, moreover,

8

that the absence of any such agreement deprived the court of appellate jurisdiction to entertain the interlocutory appeal. 330 F.3d at 287.

Cerveceria was an exceptional case. It appears that there is only one other published decision of this court that has dismissed an appeal of an anti-arbitration ruling for failure to satisfy the requisites of § 16(a)(1). That case was Adams v. Georgia Gulf Corp., 237 F.3d 538 (5th Cir. 2001) (per curiam), in which a personal-injury plaintiff who was undisputedly not a signatory to any arbitration agreement sought a stay of litigation pursuant to 9 U.S.C. § 3, relying on an arbitration agreement entered into between the defendant and the defendant's insurer. The district court denied the plaintiff's request for a stay, and the plaintiff appealed. We held that § 3's mandatory stay was unavailable to the plaintiff, as he was plainly not a party to the arbitration agreement. Id. at 540-41. Since § 3 was inapplicable, we further reasoned that the plaintiff could not avail himself of § 16's right to an interlocutory appeal of the district court's order, and we accordingly dismissed the appeal for want of jurisdiction. Id. at 541-42; accord DSMC Inc. v. Convera Corp., 349 F.3d 679, 684-85 (D.C. Cir. 2003).[8]

---

[8] We observe that our cases have not uniformly endorsed Adams's view regarding whether § 3's mandatory stay provision is available in such a case. In Hill v. GE Power Sys., Inc., 282 F.3d 343 (5th Cir. 2002), we noted that § 3 generally applies only as between parties to an arbitration agreement, but we nonetheless held that a defendant who was not a party to an

9

We conclude that the instant case provides no occasion to deviate from the general, congressionally mandated rule that anti-arbitration decisions are immediately appealable under § 16(a)(1). In particular, unlike the situation in <u>Cerveceria</u>, here the proponents of arbitration have produced documents, which the plaintiff admits she signed, that purport to be an agreement between the parties to arbitrate their dispute. The district court simply ruled that the documents, due to a purported lack of mutual assent, did not constitute a binding agreement as a matter of state law. In <u>Cerveceria</u>, by contrast, the proponent of arbitration could point to nothing more than a general cross-reference to a state code, which code itself did not even contemplate mandatory arbitration of the parties' dispute. 330 F.3d at 286-87. To be sure, a party cannot conjure up interlocutory appellate jurisdiction merely by incanting the words "arbitration agreement." Thus, there may well be cases in which an attempt to compel arbitration is so meritless that it

arbitration agreement could invoke § 3's mandatory stay in certain cases in which the plaintiff's claims against that defendant were inseparable from the plaintiff's claims against a defendant with whom the plaintiff had entered into a binding arbitration agreement. <u>Id.</u> at 346-48. <u>Hill</u> also specifically addressed the issue of appellate jurisdiction and held that the non-signatory defendant could use § 16(a)(1) to bring an appeal. <u>Id.</u> at 348. As the arbitration agreement at issue in today's case explicitly covers May's claims against Carr, as well as her claims against Dillard's, we have no occasion to resolve any disharmony in our circuit's cases regarding the rights of litigants who are not actually parties to an arbitration agreement.

fails to trigger the advantages of the statute authorizing the interlocutory appeal.  But any such cases would be the exception, the rare exception, and today's case--which allows an appeal of the denial of a motion made under 9 U.S.C. §§ 3 and 4--represents the rule that Congress created by enacting 9 U.S.C. § 16(a)(1).

Although the circumstances of today's case are very different from the unusual situation in <u>Cerveceria</u>, May nonetheless directs us to certain broad language in <u>Cerveceria</u> that seems to suggest that our appellate jurisdiction under § 16 turns wholly on whether <u>the district court</u> thought that the parties had entered into a clear, binding agreement to arbitrate. <u>See</u> 330 F.3d at 286-87.[9]  That is, we would lack jurisdiction to review the district court's denial of a motion to compel arbitration except in cases where <u>the district court</u> determines that there <u>is</u> a clear agreement to arbitrate but denies the motion for some other reason.  Whether that is what <u>Cerveceria</u> is saying is at least doubtful; it does not cite any authority for such a proposition, and indeed such a view would conflict with prior decisions of this circuit, as well as the text of the statute authorizing interlocutory appeals.  The law of this circuit has long been that the question whether the parties have

---

[9]     Despite this language, <u>Cerveceria</u> still in fact reviewed the merits of the district court's decision that there was no agreement to arbitrate, albeit as a round-about way to determine whether there was appellate jurisdiction.  <u>See</u> 330 F.3d at 286.

11

entered into a binding agreement to arbitrate is one of the inquiries that we undertake in an interlocutory appeal of the denial of a motion to compel arbitration.  See, e.g., Am. Heritage Life Ins. Co. v. Lang, 321 F.3d 533, 536-39 (5th Cir. 2003) (noting jurisdiction under § 16(a)(1) and proceeding to consider whether the parties had entered into a valid arbitration agreement); Chailland v. Brown & Root, Inc., 45 F.3d 947, 949 & n.5 (5th Cir. 1995) (invoking jurisdiction under § 16(a)(1) despite the court's subsequent conclusion that there was no agreement to arbitrate); Tays v. Covenant Life Ins. Co., 964 F.2d 501 (5th Cir. 1992) (exercising interlocutory jurisdiction and ruling on whether the defendant was a party to an agreement to arbitrate).[10]  Cerveceria could not overrule those decisions.  United States v. Walker, 302 F.3d 322, 325 (5th Cir. 2002).  In light of the preexisting authority, we cannot and do not accept

---

[10]     May's proffered limitation on § 16(a)(1) would also conflict with the views of other circuits, which recognize that the inquiry on interlocutory appeal includes the question whether there exists a binding contract.  See, e.g., Specht v. Netscape Communications Corp., 306 F.3d 17, 25-26, 28-30 (2d Cir. 2002); TechnoSteel, LLC v. Beers Constr. Co., 271 F.3d 151, 161-64 (4th Cir. 2001); PCS Nitrogen Fertilizer, L.P. v. Christy Refractories, L.L.C., 225 F.3d 974, 976, 978 (8th Cir. 2000); Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 102-04 (3d Cir. 2000); see also Telecom Italia, SpA v. Wholesale Telecom Corp., 248 F.3d 1109, 1114 (11th Cir. 2001) ("[The argument against jurisdiction] is unavailing because it confuses the reason for the District Court's ruling against arbitration with the appealability of the ruling.  Whether or not the District Court was correct in ruling against arbitration, its ruling denied a requested stay of the action pending arbitration and was for that reason appealable.").

May's reading of <u>Cerveceria</u> in this respect.  We will therefore deny May's motion to dismiss the appeal.

### III. MERITS

Satisfied of our jurisdiction, we turn now to the question whether the district court erred in denying the defendants' motion to compel arbitration and to stay the judicial proceedings.  Our guiding principle in this inquiry is the rule that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  <u>AT&T Techs., Inc. v. Communications Workers of Am.</u>, 475 U.S. 643, 648 (1986) (internal quotation marks omitted).  The district court rejected the defendants' effort to compel arbitration because it concluded that there was no binding contract, May having never assented to be bound to the terms of the arbitration program.

In reaching its decision, the district court held as a matter of law that the Acknowledgment Form was ambiguous with regard to whether May's signature indicated that she <u>agreed to be bound</u> by the Rules or only that she <u>agreed that she had received</u> the Rules.  Resolving that ambiguity with parol evidence of Carr's statements, the district court held that May had not in fact assented to binding arbitration but had only agreed that she had received certain forms.  On appeal, May defends the district

13

court's decision on the same basis.[11]  For their part, the defendants argue that the district court fundamentally misunderstood the nature and purpose of the Acknowledgment Form. May's signing the Acknowledgment Form, according to the defendants, was not meant to be a manifestation of assent to be bound by the Rules.  Rather, they contend, the Acknowledgment Form merely put May on notice that continued employment would constitute assent, and May in fact manifested that assent by remaining employed at the Dillard's store.

As the district court correctly recognized, the question whether the parties formed a valid agreement to arbitrate is a matter governed by principles of state contract law, see Wash. Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260, 264 (5th Cir. 2004), in this case the contract law of Mississippi.  The district court's determination that the writings that form the basis of the alleged contract are ambiguous is a question of law that we review de novo.  Exxon Corp. v. Crosby-Miss. Res., Ltd., 154 F.3d 202, 209 (5th Cir. 1998); see also Cargill Ferrous Int'l v. SEA PHOENIX MV, 325 F.3d 695, 697 (5th Cir. 2003) (stating the

---

[11]     Although the district court's reliance on May's evidence regarding her supervisor's comments was primarily based on the court's determination that the documents were ambiguous, the court also deemed it proper to consider such evidence because the actual form that May signed had been lost.  Yet there is no genuine dispute on this record as to the contents of the form that May signed, see supra note 1, and May's brief does not argue that the unavailability of the actual form justified the use of parol evidence.  Our analysis, like May's, will confine itself to the question whether the agreement was ambiguous.

14

overarching rule that the district court's denial of a motion to compel arbitration is reviewed de novo).

Having considered the parties' arguments and the record, we conclude that the district court erred in its reading of the relevant documents and misunderstood how the documents worked together to create a binding agreement to arbitrate. The district court concluded that the Acknowledgment Form was internally inconsistent because, in the court's view, the form announced itself as both a mere acknowledgment that May had received documents and at the same time purported to bind May to arbitration. Properly construed, however, the Acknowledgment Form and May's signature thereon did not by themselves constitute May's assent to arbitration. By signing the Acknowledgment Form, May indicated that she had received the Rules, but the signature did not all by itself bind May to the arbitration program. Rather, May became bound through her subsequent conduct, for the Acknowledgment Form unambiguously notified May that "[e]mployees are deemed to have agreed to the provisions of the Rules by virtue of . . . continuing employment [with Dillard's]." In other words, the Acknowledgment Form notified May of how she would manifest her assent to be bound. She undisputedly continued her employment at Dillard's, thus manifesting assent in the requested manner. The district court should not have looked to May's evidence regarding Carr's statements to vary the terms of the unambiguous writings that were before it. See United

15

States Small Bus. Admin. v. Guar. Bank & Trust Co. (In re Whatley), 874 F.2d 997, 1004 n.11 (5th Cir. 1989); HeartSouth, PLLC v. Boyd, 865 So. 2d 1095, 1107-08 (Miss. 2003).[12]

Continuing one's employment after receiving notice that continued employment will constitute assent is a recognized manner of forming a contract. As a general matter, Mississippi courts have long held that a party's conduct may manifest assent to an agreement. See Edwards v. Wurster Oil Co., 688 So. 2d 772, 775 (Miss. 1997); Misso v. Nat'l Bank of Commerce, Memphis, Tenn., 95 So. 2d 124, 126 (Miss. 1957) (observing that "an offer and acceptance may be expressed by acts as well as by words"). Although the defendants have not directed us to a Mississippi case that specifically addresses whether a party can manifest assent through continued employment, we see no reason to think that the Mississippi courts would reject the general rule when it comes to this particular species of assent-manifesting conduct.[13] Indeed, a great many courts have held under the law of various states that a party may manifest assent through continued employment. See, e.g., Gutman v. Baldwin Corp., No. Civ.A. 02-

[12] As her counsel admitted during oral argument in this court, May has not contended that she was fraudulently induced into entering into the arbitration agreement, which might have provided a reason to examine Carr's statements.

[13] Moreover, a state would not be permitted to employ special rules of contract formation that apply only to arbitration agreements. See 9 U.S.C. § 2 (2000); Doctor's Assocs. v. Casarotto, 517 U.S. 681, 687 (1996); Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987).

CV-7971, 2002 WL 32107938, at *4 (E.D. Pa. Nov. 22, 2002); Lang v. Burlington N. R.R. Co., 835 F. Supp. 1104, 1105-06 (D. Minn. 1993); Baptist Health Sys., Inc. v. Mack, 860 So. 2d 1265, 1273-74 (Ala. 2003); In re Halliburton Co., 80 S.W.3d 566, 568-69 (Tex. 2002), cert. denied, 537 U.S. 1112 (2003); Asmus v. Pac. Bell, 999 P.2d 71, 79 (Cal. 2000).

In addition to arguing that she had not assented to the arbitration program, May's submissions in the district court also contended that the arbitration agreement would be unconscionable and that there was no consideration for her promise to arbitrate. May's brief on appeal does not offer any argument on those theories, and we express no opinion on whether the arbitration agreement could be challenged on those grounds. We hold only that the district court erred in determining that the parties' putative contract lacked the element of mutual assent.

## IV. CONCLUSION

For the foregoing reasons, May's motion to dismiss the appeal is DENIED, the district court's judgment is REVERSED, and the cause is REMANDED to the district court for entry of an appropriate order granting the defendants' request for arbitration.[14] Costs shall be borne by May.

---

[14] We also dispose of the following outstanding motions as follows: May's motion to supplement the record on appeal is DENIED, the defendants' motion to order May to file corrected record excerpts is DENIED AS MOOT, and the defendants' motion to certify questions to the Mississippi Supreme Court is DENIED. See supra note 4.