United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 30, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))))))

No. 04-60572

)))))))))))))))))))))))))))

VERA P. CARSON,

Plaintiff–Appellee,

v.

HIGBEE COMPANY; WILLIAM CARR,

Defendants–Appellants.

---

Appeal from the United States District Court
for the Southern District of Mississippi

---

Before SMITH, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Higbee Company d/b/a Dillard's ("the Company" or
"Dillard's") and William Carr (collectively, "Defendants") appeal
the district court's denial of their motion to compel
arbitration.  We reverse and remand.

I.

Vera Carson began working at Dillard's as a sales associate
in 1993 and was eventually promoted to the position of assistant

---

[*]Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

1

sales manager.  She was still working in that position when in 2001, the Company adopted an arbitration policy for employment-related disputes.  That year, the Company held a management meeting to discuss the policy.  Carson attended.

During the 2001 meeting, the store manager, William Carr, showed the attendees two documents related to the Company's new arbitration policy: the Rules of Arbitration and an acknowledgment form.  The acknowledgment form was labeled "Acknowledgment of Receipt of Rules of Arbitration."  It described the purposes of the arbitration policy and contained the following notice provision:

> Effective immediately, all employees (as hereinafter defined) of Dillard's, Inc., its affiliates, subsidiaries and Limited Liability Partnerships (the "Company") shall be subject to the RULES OF ARBITRATION (the "Rules") described below. *Employees are deemed to have agreed to the provisions of the Rules by virtue of accepting employment with the company and/or continuing employment therewith.*

(Emphasis added).  Below the notice provision was a space for both the Company employee's signature as well as that of a Company representative.  The notice provision was printed in the same font size, but different font style, as the rest of the acknowledgment form.[1]

Carson continued her employment with Dillard's after the Rules of Arbitration were implemented.  During this time, she

---

[1] The notice provision was in roman type; the rest of the acknowledgment form was italicized.

dealt with the acknowledgment form on a daily basis.  A copy of the form was on display in the Company's personnel office.  In addition, Carson assisted Dillard's in obtaining signatures on the acknowledgment form from other employees and signed several forms herself as a witness to other signatures.

Nevertheless, Carson testified that she could not remember whether she signed the acknowledgment form.  However, she did not refuse to sign the form either verbally or in writing.[2]  Carson also claims she was told that the arbitration policy would be optional for employees in management positions.

In March 2002, Carson applied for and was denied the position of assistant store manager.  The following month, she brought suit against the Company and Carr, alleging claims of sex and race discrimination.

The Defendants filed a motion to compel arbitration, which the district court denied.  The Defendants timely appealed.

## II.

We review the denial of a motion to compel arbitration de novo.  *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 337 (5th Cir. 2004).  Where, as here, the issue is whether the parties have a valid and enforceable agreement to arbitrate, courts apply the contract law of the state governing the

---

[2] Some employees did refuse to sign the acknowledgment form. Those employees were not terminated, nor is there any evidence that they suffered adverse employment-related consequences for their failure to sign.

agreement. *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004).[3] Mississippi contract law applies here.[4]

Carson raises three issues on appeal: First, she claims that she did not assent to arbitration. Second, she claims that if an agreement to arbitrate does exist, that agreement is unconscionable. Finally, Carson claims that any agreement to arbitrate was procured by fraudulent inducement. We will address each argument in turn.

A.

Arbitration must proceed by agreement: "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *May v. Higbee Co.*, 372 F.3d 757, 763 (5th Cir. 2004) (quoting *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986)). Carson's first argument is that no agreement to arbitrate exists in this case. Specifically, she makes two claims: First, Carson argues that "there are no actions which

---

[3] *See also* 9 U.S.C. § 2 (stating that arbitration agreements are enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract"); *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) ("[G]enerally applicable [state-law] contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2.").

[4] Both Carson and Carr are citizens of Mississippi, and Mississippi is the site of the controversy. *See Boardman v. United Servs. Auto. Ass'n*, 470 So. 2d 1024, 1031 (Miss. 1985) (explaining that Mississippi follows the "center of gravity" approach to choice-of-law issues).

4

indicate that [she] intended to be bound by the arbitration agreement"; that is, there was no written acceptance of the arbitration policy, nor was her continued employment with Dillard's enough to manifest assent.  Second, Carson argues that even if she had signed the acknowledgment form, it is an ambiguous document, and thus parol evidence may be introduced to clarify its meaning.  According to Carson, she was told that the arbitration policy would be optional for management employees.  Thus, she argues, her continued employment did not constitute acceptance of the contract.

We must reject both of these claims in light of *May v. Higbee Company*, 372 F.3d 757 (5th Cir. 2004), issued shortly before the district court ruled in this case.[5]  That case is indistinguishable: it involved the same defendants, the same arbitration policy and acknowledgment form, and a plaintiff similarly situated to Carson.

In *May*, a panel of this court rejected the same argument that Carson makes here.  *May*, 372 F.3d at 764.  First, the court held that the acknowledgment form was not ambiguous, explaining,

> Properly construed, . . . the Acknowledgment Form and May's signature thereon did not by themselves constitute May's assent to arbitration.  By signing the Acknowledgment Form, May indicated that she had received

---

[5] *See also Marino v. Dillard's, Inc.*, 413 F.3d 530, 533 (5th Cir. 2005) ("As in *May*, the Acknowledgment Form here is clear in advising Marino . . . of the means of consent, *i.e.*, Marino's continued employment with Dillard's.").

5

the Rules, but the signature did not all by itself bind May to the arbitration program. Rather, May became bound through her subsequent conduct, for the Acknowledgment Form unambiguously notified May that "[e]mployees are deemed to have agreed to the provisions of the Rules by virtue of . . . continuing employment [with Dillard's]."

*Id.* (second ellipsis in original). Thus, the court explained, the acknowledgment form "notified May of how she would manifest her assent to be bound"——by her continued employment. *Id.* Furthermore, May undisputedly continued her employment with Dillard's, manifesting her assent to be bound by the Rules of Arbitration. *Id.* Therefore, the court held, the district court had erred in looking to parol evidence "to vary the terms of the unambiguous writings that were before it." *Id.*

The *May* court also noted that "Mississippi courts have long held that a party's conduct may manifest assent to an agreement."[6] And even though there was no Mississippi case specifically addressing continued employment in the context of arbitration agreements,[7] the *May* court "[saw] no reason to think that the Mississippi courts would reject the general rule when it comes to this particular species of assent-manifesting conduct." *Id.* at 765. To buttress that conclusion, the *May* court pointed out that

---

[6] *May*, 372 F.3d at 764 (citing *Edwards v. Wurster Oil Co.*, 688 So. 2d 772, 775 (Miss. 1997); *Misso v. Nat'l Bank of Commerce*, 95 So. 2d 124 (Miss. 1957)).

[7] Our more recent research continues to reveal no Mississippi case addressing continued employment in the context of arbitration agreements.

6

many other courts had "held under the law of various states that a party may manifest assent through continued employment."[8] Because the acknowledgment form was not ambiguous and May assented to the Rules of Arbitration through her continued employment, this court reversed the district court's denial of the Company's motion to compel arbitration. *Id.* at 765.

Carson attempts to distinguish *May* by pointing out that the plaintiff in that case admitted to having signed the acknowledgment form. That fact, however was irrelevant to the court's decision in *May*: it was May's continued employment—not her signature—that manifested her assent to be bound by the arbitration policy. *Id.* at 764. Thus, the factual difference between this case and *May* changes nothing. Carson, like May, manifested her assent to arbitration by continuing her employment with Dillard's. Her first argument is rejected.

B.

Carson next argues that the arbitration agreement is unconscionable and therefore invalid. Mississippi courts recognize two types of unconscionability: procedural and substantive. *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 714

---

[8] *May*, 372 F.3d at 765 (citing *Gutman v. Baldwin Corp.*, No. Civ. A 02-CV-7971, 2002 WL 32107938, at *4 (E.D. Pa. Nov. 22, 2002); *Lang v. Burlington N. R.R. Co.*, 835 F. Supp. 1104, 1105–06 (D. Minn. 1993); *Baptist Health Sys., Inc. v. Mack*, 860 So. 2d 1265, 1273–74 (Ala. 2003); *In re Haliburton Co.*, 80 S.W.3d 566, 568–69 (Tex. 2002); *Asmus v. Pac. Bell*, 999 P.2d 71, 79 (Cal. 2002)).

(Miss. 2002).  Carson argues both types of unconscionability here.

1.

Carson may prove that the agreement to arbitrate is procedurally unconscionable by showing "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms."  *East Ford*, 826 So. 2d at 714 (internal quotation marks omitted).  She has not done so.

Carson's procedural unconscionability arguments can be summarized as follows: Carson did not voluntarily enter into the arbitration agreement because it was a contract of adhesion, unilaterally imposed on her by the Company; the provision of the acknowledgment form notifying the employee that continued employment would constitute acceptance of the arbitration contract was "an inconspicuous statement within the document[] in legalistic language"; there was a "lack of knowledge" by Carson of the contract terms because she did not have "the least opportunity to discuss or negotiate the . . . policy's provisions"; and there was a disparity in bargaining power between Carson and the Company.

Carson principally relies on *East Ford, Inc. v. Taylor*, 826

8

So. 2d 709 (Miss. 2002), to support these arguments. In that case, Taylor filed suit against East Ford, alleging that East Ford had sold him a used truck that was represented to him as new. *Id.* at 711. When he bought the vehicle, Taylor signed a purchase agreement that contained an arbitration clause. *Id.* After Taylor filed suit, East Ford moved to compel arbitration based on the contract clause. *Id.* The trial court found the arbitration agreement to be unconscionable, and the Mississippi Supreme Court affirmed. *Id.*

The *East Ford* court held that the arbitration clause at issue in that case was procedurally unconscionable because Taylor was not told of the arbitration provision before signing the contract; the font size of the provision was one-third the size of other terms of the contract; and the arbitration provision was not underlined or emphasized and did not otherwise alert the reader to its importance. *Id.* at 714–17. The facts of this case are not comparable.

Here, Carson undoubtedly knew of the arbitration policy: she attended the 2001 meeting where Carr introduced the policy to Company employees; a copy of the acknowledgment form was on display in the Company personnel office; and Carson assisted Dillard's in obtaining signed acknowledgment forms from other employees, even signing several forms herself as a witness. Moreover, the arbitration agreement in the acknowledgment form is

9

the entire contract. In *East Ford*, by contrast, the arbitration agreement was just one provision of a contract for the sale of an automobile. Here, the notice provision was in the same font size as the rest of the acknowledgment form and in a different font type; there, the arbitration provision was obscured. Finally, as the *East Ford* court recognized, this court has previously held that contracts of adhesion are not automatically void. *Id.* at 716 (citing *Hughes Training, Inc. v. Cook*, 254 F.3d 588, 593 (5th Cir. 2001)). *East Ford* is distinguishable. The arbitration agreement is not procedurally unconscionable.

2.

Carson also argues that the arbitration agreement is substantively unconscionable. Substantive unconscionability may be proven by showing that the terms of the arbitration agreement are oppressive. *East Ford*, 826 So. 2d at 714. "Substantively unconscionable clauses have been held to include waiver of choice of forum and waiver of certain remedies." *Id.*

Carson again relies on *East Ford* to make her substantive unconscionability argument. The court did not reach the issue of substantive unconscionability in that case, *id.* at 717, but suggested in a later case that the terms of the *East Ford* provision might have indeed been substantively unconscionable, *see Russell v. Performance Toyota, Inc.*, 826 So. 2d 719, 726 n.1 (Miss. 2002) (distinguishing *East Ford* from the case before the

10

court).

The contract provision at issue in *East Ford* allowed East Ford to unilaterally rescind the arbitration agreement, while Taylor could only rescind the agreement if his Lemon Law rights were implicated. *East Ford*, 826 So. 2d at 715; *Russell*, 826 So. 2d at 726 n.1. Carson argues that the Company's arbitration agreement is substantively unconscionable because it suffers from the same defect as the provision in *East Ford*. Specifically, she claims that under the Rules of Arbitration, "nearly all conceivable employee rights to a judicial forum are waived," while the Company is permitted to seek judicial relief in cases involving unfair competition, the use or disclosure of trade secrets or confidential information, and potential criminal claims.

This argument ignores the record evidence showing that many employee claims are, in fact, not covered by the agreement. For example, claims under ERISA, wage claims not brought under a statute or ordinance, and claims precluded from arbitration under the National Labor Relations Act may be brought in a judicial forum. Under the agreement at issue here, both the Company and the employee retain the right to a judicial forum in certain instances; thus, this agreement is wholly unlike that in *East Ford*, where East Ford could unilaterally rescind the agreement in any circumstance. The agreement here is not substantively

unconscionable.

C.

Finally, Carson argues that she was fraudulently induced to enter into the arbitration agreement.  Carson failed to raise this argument before the district court; therefore, we will not consider it here.  *See, e.g.*, *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1163 (5th Cir. 1992) (refusing the consider a fraudulent inducement claim raised for the first time on appeal).

III.

For the foregoing reasons, the district court erred in denying the Company's motion to compel arbitration.  The judgment is reversed.

REVERSED and REMANDED.