# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 6, 2007**

Charles R. Fulbruge III
Clerk

No. 06-20810

JOSE MORAN; KELLY SIMMONS; and DAVID GOLLINGER

Plaintiffs-Appellees

v.

CEILING FANS DIRECT, INC.

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:06-CV-813

Before DEMOSS, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:[*]

This case involves the validity and scope of an arbitration agreement. The district court determined that (1) the defendant-employer did not give adequate notice of its arbitration policy to its employees; (2) if it did give adequate notice, the plaintiffs-employees did not accept the terms of the policy; and (3) if they did accept the terms, the policy did not cover the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA") claims at issue. We also requested supplemental briefing on the issue of jurisdiction. For the following reasons, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. BACKGROUND FACTS

Ceiling Fans Direct, Inc. ("CFD") is a Texas corporation that installs ceiling fans in new residential construction projects in the Houston metro and surrounding areas. Jose Moran and Kelly Simmons (collectively, "Appellees") formerly worked as ceiling fan installers for CFD.[1]

In the summer of 2005, several CFD employees sued CFD in federal court for overtime compensation alleging that CFD mis-classified them as exempt employees under the FLSA. In December of 2005, the United States Department of Labor ("DOL") initiated an investigation and filed an FLSA lawsuit on August 30, 2005. The suit eventually settled.

On December 28, 2005, Appellees attended a meeting with various other employees to discuss changes in pay rates, service calls, and the new CFD arbitration policy. At the end of the meeting, President and General Manager Darrell Ellefson ("Ellefson") mentioned that CFD was instituting a policy requiring arbitration for all employment-related disputes. The parties have different accounts of this meeting. According to CFD, Ellefson personally handed out a copy of a document entitled "Notice to All Employees of Ceiling Fans Direct, Inc. of Dispute Resolution Program" ("Notice") to each individual employee. According to Appellees, copies of the Notice were sitting on a table, and they were invited to take one and read it.

The Notice provided in pertinent part:

EMPLOYEE AND CFD AGREE THAT ANY [AND] ALL DISPUTES ARISING OUT OF OR RELATING TO ANY ASPECT OF EMPLOYEE'S EMPLOYMENT, COMPENSATION, OR

---

[1] On May 18, 2006, the district court granted a motion for leave to file an amended complaint to add David Gollinger ("Gollinger") as a party-plaintiff. Gollinger was an employee at CFD prior to December 28, 2005. Because Gollinger was not employed by CFD when it instituted its arbitration policy, Gollinger's claims are not covered by the policy.

TERMINATION OF EMPLOYMENT WITH CFD . . . SHALL BE EXCLUSIVELY ARBITRATED AS PROVIDED BELOW.

It also stated that any employee who returned to work after December 28, 2005 would be deemed to have accepted the terms of the policy. However, this provision was never read nor explained to the employees at the meeting. In fact, at that point, Ellefson had not even read the policy. In response to one question, he simply stated, "Yeah, this paper means you can't sue this ni\*\*er!" As Ellefson was aware, many of the employees, including Appellees, did not take a copy of the Notice. When some employees complained that they would not sign anything, Ellefson informed them that it did not matter, that they did not have to sign anything, but that they still could not sue CFD. A few days later, however, Simmons told Ellefson that he would not sign the policy and Ellefson told him not to worry about it.

In January of 2006, CFD issued a new employee handbook that included another copy of the arbitration agreement and a signature page entitled, "Acknowledgment by Employee," which read "I hereby state, I have read and understand the preceding 'Employee Handbook' and have agreed to abide by the Dispute Resolution Program." However, it is undisputed that CFD did not require any signatures and that no employee, including Ellefson, actually signed the handbook. In contrast, each employee was required to initial their agreement to the CFD policy on drug and alcohol use at the workplace. Although the handbook indicated that "CFD retains the right to amend, modify or discontinue this dispute resolution program through additional written notice at any time," Ellefson circulated a memo dated April 27, 2006 indicating that it was "not true" that the arbitration policy "can be changed or discontinued at anytime [sic]."

On March 9, 2006, Appellees filed suit against CFD for unpaid overtime wages and retaliation under the FLSA. Shortly thereafter, Ellefson approached

various employees and informed them that CFD was in financial trouble, that the lawsuit would be a "death blow" to the company, and that CFD would take care of its employees for the overtime compensation it owed. At no point did he state that the FLSA claims were subject to the arbitration policy. Appellees subsequently resigned from employment with CFD.

On April 3, 2006, CFD filed a motion to compel arbitration. The district court denied the motion, concluding that (1) CFD did not give adequate notice of its arbitration policy to its employees; (2) if it did give adequate notice, Appellees did not accept the terms of the policy; and (3) if they did accept the terms of the policy, the policy did not cover the FLSA claims at issue. CFD filed a timely notice of appeal.

## II. STANDARD OF REVIEW

This court reviews de novo the legal question of subject matter jurisdiction. Meredith v. Louisiana Fed'n of Teachers, 209 F.3d 398, 402 (5th Cir. 2000). This court also reviews a district court's denial of a motion to compel arbitration de novo, using the same standard as the district court. Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V., 372 F.3d 339, 341 (5th Cir. 2004) (citing Texaco Exploration & Prod. v. AmClyde Engineered Prods., 243 F.3d 906, 909 (5th Cir. 2001)); Harvey v. Joyce, 199 F.3d 790, 793 (5th Cir. 2000). Finally, this court reviews a district court's interpretation of a state law de novo. Am. Bankers Ins. Co. of Florida v. Inman, 436 F.3d 490, 492 (5th Cir. 2006) (citing Concise Oil & Gas P'ship v. La. Intrastate Gas Corp., 986 F.2d 1463, 1471 (5th Cir. 1993)).

## III. JURISDICTIONAL ANALYSIS

Based on this court's previous decisions in Cerveceria Cuauhtemoc Moctezuma S.A. de C.V. v. Montana Beverage Co., 330 F.3d 284 (5th Cir. 2003) (per curiam) and May v. Higbee Co., 372 F.3d 757 (5th Cir. 2004), this court requested supplemental briefing on the issue of jurisdiction. The parties agree

that the sole potential avenue for jurisdiction in this case lies in 9 U.S.C. § 16(a), which states in pertinent part:

> (a) An appeal may be taken from--
>     (1) an order--
>         (A) refusing a stay of any action under section 3 of this title,
>         (B) denying a petition under section 4 of this title to order arbitration to proceed

This court has stated that "section 16 reinforces the congressional policy in favor of arbitration by making anti-arbitration decisions widely appealable even when interlocutory, but making pro-arbitration decisions generally not appealable unless final." May, 372 F.3d at 761.

CFD moved the district court to compel arbitration under 9 U.S.C. §§ 3 and 4, but the district court denied the motion. That decision would generally be immediately appealable under 9 U.S.C. § 16(a). Appellees, however, point the court's attention to Cerveceria. In Cerveceria, the parties entered into a distributorship agreement that did not contain an arbitration agreement itself, but did incorporate by reference the entirety of the Texas Beer Industry Fair Dealing Law ("BIFDL"), Tex. Alco. Bev. Code § 102.71, et seq., which provides in pertinent part that certain disputes "may, at the option of either [party]" be submitted to arbitration. A dispute arose between the parties, the plaintiffs filed suit, and the defendant moved to compel arbitration. The district court refused to compel arbitration, finding that there was no binding agreement to arbitrate. This court agreed and further concluded that the absence of any such agreement deprived the court of appellate jurisdiction. Cerveceria, 330 F.3d at 287.

In May, however, this court characterized Cerveceria as "an exceptional case." 372 F.3d at 761. This court recognized that "there may well be cases in which an attempt to compel arbitration is so meritless that it fails to trigger the advantages of the statute authorizing the interlocutory appeal. But any such

cases would be the exception, the rare exception." Id. at 762. This court further recognized that a broad reading of Cerveceria's jurisdictional holding would conflict with prior decisions of this circuit and the decisions in other circuits.[2] Id. at 763 & n.10. We agree that Cerveceria is an "exceptional" case in which the attempt to compel arbitration was so meritless that it failed to trigger the advantages of § 16(a). Indeed, Cerveceria involved a contract, that incorporated a statute, that contained a provision, that provided only for permissive arbitration. 330 F.3d at 287. In contrast, CFD has provided an actual agreement that contains a mandatory arbitration clause. We conclude that § 16(a) confers jurisdiction over this appeal notwithstanding the district court's opinion that the documents at issue failed to constitute a binding agreement to arbitrate. See Iberia Credit Bureau Inc. v. Cingular Wireless LLC, 379 F.3d 159, 165 (5th Cir. 2004).

## IV. MERITS ANALYSIS

CFD argues that the district court erred in finding that CFD did not give adequate notice of its arbitration policy and that the district court further erred in finding that even if adequate notice was given, Appellees did not accept the terms of the policy. "Arbitration is 'a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" PaineWebber Inc v. The Chase Manhattan Private Bank (Switzerland), 206 F.3d 453, 462 (5th Cir. 2001) (quoting United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960)). Courts conduct a two-step inquiry in determining whether parties should be compelled to arbitrate a dispute.

---

[2] See, e.g., Am. Heritage Life Ins. Co. v. Lang, 321 F.3d 533, 536-39 (5th Cir. 2003); Chailland v. Brown & Root, Inc., 45 F.3d 947, 949 & n.5 (5th Cir. 1995); Tays v. Covenant Life Ins. Co., 964 F.2d 501 (5th Cir. 1992); see also Specht v. Netscape Communications Corp., 306 F.3d 17, 25-26, 28-30 (2d Cir. 2002); TechnoSteel, LLC v. Beers Constr. Co., 271 F.3d 151, 161-64 (4th Cir. 2001); PCS Nitrogen Fertilizer, L.P. v. Christy Refractories, L.L.C., 225 F.3d 974, 976, 978 (8th Cir. 2000); Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 102-04 (3d Cir. 2000); Telecom Italia, SpA v. Wholesale Telecom Corp., 248 F.3d 1109, 1114 (11th Cir. 2001).

Washington Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260, 264 (5th Cir. 2004). First, the court determines whether the parties agreed to arbitrate the dispute by evaluating whether there is a valid agreement to arbitrate and whether the dispute falls within the scope of the agreement. Am. Heritage Life Ins. Co. v. Lang, 321 F.3d 533, 536 (5th Cir. 2003) (citation omitted). Second, if the court finds that the parties agreed to arbitrate, it next determines whether any federal statute or policy renders the claims nonarbitrable. Bailey, 364 F.3d at 264.

"Although there is a strong federal policy favoring arbitration, this federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." Will-Drill Res., Inc. v. Samsom Res. Co., 352 F.3d 211, 214 (5th Cir. 2003) (internal quotations and citations omitted). Instead, the question of whether the parties agreed to arbitrate a dispute is governed by state contract law. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

Under Texas law, which is applicable in this case, an employer may change the terms of an at-will employment contract if he or she gives notice of the change and the employee accepts the change. In re Halliburton Co., 80 S.W.3d 566, 568 (Tex. 2002) (citing Hathaway v. Gen. Mills, Inc., 711 S.W.2d 227, 229 (Tex. 1986)). "[T]o prove notice, an employer asserting a modification must prove that he unequivocally notified the employee of definite changes in employment terms." Hathaway, 711 S.W.2d at 229 (emphasis added). The employee must have knowledge of the proposed modification, which includes not only knowledge of the nature of the change, but also knowledge of the certainty of its imposition. Id. (citations omitted). When an employer notifies an employee of changes to the at-will employment contract and the employee continues working with knowledge of those changes, the employee has accepted those changes as a matter of law. Id. (citation omitted).

Based on the Texas Supreme Court's decision in Hathaway, in which the court refused to find a valid contract modification, we agree that there was no valid agreement between the parties to arbitrate this dispute. In Hathaway, the issue on appeal was whether the parties agreed to modify their employment-at-will contract to lower commission rates. 711 S.W.2d at 228. The employee testified that he disagreed with the rate change. Id. He further testified that his employer told him to discuss the change with the regional sales manager and to not worry about the change because the regional sales manager would "take care of the situation." Id. A month later, the employee received a letter proposal containing the new rates. Id. He did not sign the letter and testified that he was told by his employer not to do so because the regional sales manager would talk to him about the matter. Id. Based on these facts, the Texas Supreme Court concluded that the employer did not conclusively establish unequivocal notification, and without such proof, the employee's continued employment under protest did not equal acceptance as a matter of law. Id. at 229.

Here, when CFD first introduced the new arbitration policy, Ellefson did not read it, did not explain it, did not mention that continued employment would be deemed as acceptance, and was aware that many employees, including Appellees, did not take a copy of it. When CFD issued the new employee handbook, which contained a form for employees to sign acknowledging the validity of the arbitration policy, CFD did not require its employees to sign it, even though it did require the employees to sign a form concerning CFD's policy on drug and alcohol use at the workplace. All the while, Ellefson repeatedly told the employees, including Appellees, that CFD would take care of them and specifically told Simmons, who refused to sign the arbitration policy, not to worry about it. Ellefson also circulated a memo addressing the arbitration policy that directly contradicted its terms. Like the situation in Hathaway, we conclude that CFD did not conclusively establish unequivocal notification, and

8

without such proof, Appellees' continued employment under protest did not equal acceptance under Texas law.

CFD's citation to Halliburton is unavailing. In Halliburton, the employee had unequivocal notice of the proposed changes to the at-will employment contract. 80 S.W.3d at 568-69. Moreover, the Texas Supreme Court emphasized, "[t]his is not a case in which the written notice was contradicted by other written or oral communications between the employer and the employee." Id. at 569. In contrast, Appellees did not receive unequivocal notice of the arbitration policy and there were several contradictory written and oral communications between Ellefson and Appellees.

CFD's citation to In re Dillard Dept. Stores, Inc., 198 S.W.3d 778 (Tex. 2006) is also unavailing. In Dillard, the employee-plaintiff admitted that she received and read the arbitration agreement, which conspicuously warned that any employee was deemed to accept the policy by continuing her employment. Id. at 780-81. In contrast, Appellees did not receive or read the arbitration policy and there is no evidence that they were otherwise informed that they were deemed to accept the policy by continuing their employment.[3]

## CONCLUSION

For the foregoing reasons, the decision of the district court is affirmed.

AFFIRMED.

---

[3] Because we conclude that CFD has not established unequivocal notice or acceptance, we need not address the issues of whether the FLSA claims at issue would be covered under the arbitration policy or whether any federal statute or policy renders the claims nonarbitrable. See Bailey, 364 F.3d at 264.