NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0299n.06

No. 20-4341

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>CAROLYN VALENTINE, CPA,<br><br>    Plaintiff-Appellant,<br><br>v.<br><br>HEALTH AND WELLNESS LIFESTYLE<br>CLUBS, LLC,<br><br>    Defendant-Appellee.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td><strong>FILED</strong><br>Jul 22, 2022<br>DEBORAH S. HUNT, Clerk<br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO</td></tr>
</table>

Before: BOGGS, WHITE, and READLER, Circuit Judges.

BOGGS, Circuit Judge. Plaintiff-Appellant Carolyn Valentine argues that the district court wrongly declined to enjoin a pending arbitration conducted under the internal rules of the Financial Industry Regulatory Authority ("FINRA"). But because the Federal Arbitration Act ("FAA") limits the kinds of district-court orders that can be appealed, we must dismiss this appeal for lack of jurisdiction.

### A. Factual Background

This case arose out of a failed transaction involving country clubs. Defendant-Appellee Health and Wellness Lifestyle Clubs, LLC ("HWLC") sought to buy two clubs from John Rainieri.[1] HWLC submitted a letter of intent to purchase the clubs in July 2015. A month later, HWLC entered into two separate purchase agreements covering the assets, operations, and

---

[1] The clubs are Prestwick and Raintree. Each club was an S corporation owned outright by Rainieri, while the underlying properties were owned by Raintree Golf, LLC.

underlying property of both clubs. The transaction, however, was never consummated because HWLC was unable to obtain bank financing.

Valentine was John Rainieri's accountant. She provided accounting services to him, as well as to Raintree Golf, LLC. Separately from her work as an accountant, Valentine also sells securities as a registered representative—a technical term for an independent contractor—of H. Beck, Inc., a broker-dealer.[2] Both Valentine and H. Beck are members of FINRA. Valentine testified that she first learned of the transaction in August 2015, when Rainieri asked her to review the purchase agreements. Rainieri asked her to assist with the transaction, including providing financial statements and tax returns.

Valentine first communicated with HWLC in September 2015. She emailed Nupur Nagar, a principal of HWLC, introducing herself as "John Rainieri's CPA" and attaching several years of tax returns for the various club entities. According to Valentine, she was providing these documents without making any assurances that the information therein was accurate. When Nagar asked her to provide assurances, she refused.

Valentine had been asked to provide historical financial information in part because HWLC was seeking loans from several banks to finance the transaction. It was also intended that Rainieri would provide seller financing by accepting promissory notes from HWLC for a portion of the purchase price.

The deal finally fell apart in June 2017 because the banks that HWLC had approached declined to provide financing. The reason for this reluctance, according to HWLC, was that the financial information provided by Valentine was false and misleading. And this information was

---

[2] H. Beck, Inc. has since changed its name to Grove Point Investments, LLC. Because all of the relevant filings refer to it by its original name, we will do so as well.

2

critical: The district court found that HWLC based its decision to purchase the clubs on some of the financial materials provided by Valentine.

## B. Judicial Proceedings

This failed transaction prompted a flurry of proceedings. First, HWLC sued Rainieri and Raintree Golf, LLC, along with several others, in federal court for breach of contract, negligence, misrepresentation, and fraud. The district court granted summary judgment in favor of Rainieri and Raintree Golf, LLC on the breach-of-contract claim. That grant was affirmed by this court and the parties voluntarily dismissed all other claims without prejudice.

Next, HWLC sued Valentine in Ohio state court for fraudulent and negligent misrepresentations, promissory estoppel, and professional negligence. That case was dismissed with prejudice. At the time of the preliminary-injunction hearing in this case, that judgment was under appeal. The judgment was subsequently reversed and remanded, but Valentine ultimately obtained a jury verdict in her favor.

The arbitration at issue here followed in 2020 when HWLC filed a Statement of Claim with FINRA. Both Valentine and H. Beck were named as defendants. The basis for the FINRA arbitration was FINRA Rule 12200, which obligates FINRA members to arbitrate disputes arising in connection with the business activities of the FINRA member when requested by a "customer."[3]

---

[3] FINRA's Rules are approved by the SEC. 15 U.S.C. § 78s(b)(1). Rule 12200 governs arbitrability. It provides that:

> Parties must arbitrate a dispute under the [Code of Arbitration Procedure for Customer Disputes (the "Code")] if:
>
> - Arbitration under the Code is either:
>     (1) Required by a written agreement, or
>     (2) Requested by the customer;
> - The dispute is between a customer and a member or associated person of a member; and
> - The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

Valentine then initiated this case by filing a Complaint for Declaratory Judgment and for Preliminary and Permanent Injunction, seeking to enjoin HWLC from proceeding with the arbitration. H. Beck filed a similar complaint initiating a separate case, and the two cases were eventually consolidated. Their primary argument was that HWLC was not a "customer" of Valentine or H. Beck and therefore could not invoke arbitration under the FINRA Code.

Valentine and H. Beck next filed motions for preliminary injunctions to enjoin the FINRA arbitration. After conducting two hearings and soliciting proposed findings of fact and conclusions of law, the district court denied the motions. Valentine now appeals. Both parties originally maintained that this court had jurisdiction to consider the appeal. Unsatisfied with their assertions, we requested supplemental briefing on that issue prior to oral argument.

### C. Analysis

We have an independent obligation to assure ourselves of jurisdiction. *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 504 (6th Cir. 2006). Normally, we are permitted to review denials of preliminary injunctions such as this one. 28 U.S.C. § 1292(a)(1). But in the context of the FAA, and Congress's policy favoring the speedy resolution of claims through arbitration, that permission is limited.

Section 16 of the FAA governs appeals. The statute lists circumstances when appeals can be taken and circumstances when they cannot. It "reinforces the congressional policy in favor of arbitration by making anti-arbitration decisions widely appealable even when interlocutory, but making pro-arbitration decisions generally not appealable unless final." *May v. Higbee*, 372 F.3d 757, 761 (5th Cir. 2004). A losing party, for example, can appeal an interlocutory order *granting* an injunction against an arbitration. 9 U.S.C. § 16(a)(2). But the reverse is not true. Section 16(b) provides:

> Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order—
>
> > (1) granting a stay of any action under section 3 of this title;
> > (2) directing arbitration to proceed under section 4 of this title;
> > (3) compelling arbitration under section 206 of this title; or
> > (4) refusing to enjoin an arbitration that is subject to this title.

9 U.S.C. § 16(b).

Section 16(b)(4)'s specific prohibition of appealing interlocutory refusals to enjoin arbitrations supersedes the general rule permitting appeals of interlocutory injunction orders. *See Preferred Care of Del., Inc. v. Est. of Hopkins ex rel. Hopkins*, 845 F.3d 765, 769 (6th Cir. 2017). Whether we can take this appeal, then, depends on whether the district court's order denying the motion for a preliminary injunction was (1) interlocutory and (2) sought to enjoin an arbitration "subject to" the FAA.

Beginning with the first part, we conclude that Valentine does seek to appeal an interlocutory order. An interlocutory order is one that does "not constitut[e] a final resolution of the whole controversy." *Interlocutory*, *Black's Law Dictionary* (11th ed. 2019). In other words, an interlocutory order is anything but a "final decision." And a "final decision" is one that "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86 (2000) (quotation marks omitted).

Valentine began this litigation by filing a complaint seeking a declaratory judgment as well as preliminary and permanent injunctive relief. She later filed a motion for a preliminary injunction. After that, HWLC filed an answer in response to the complaint and raised counterclaims against Valentine. After a series of hearings, the district court issued a document entitled "Findings of Fact and Conclusions of Law," addressing the motion for a preliminary injunction. The order denied the motion.

At that point, what remained of this case? There appear to be three outstanding components: HWLC's counterclaims, the request for declaratory judgment, and the request for permanent injunctive relief. The district court also granted HWLC's unopposed motion to stay the case pending the arbitration. It also ordered the cases "administratively closed, subject to reopening upon written motion." In doing so, it expressly denied Valentine's motion for judgment on the pleadings on the counterclaims, among others, and stated that those motions could be "resubmitted if the cases are reopened." That suggests that the counterclaims, to say nothing of the requests for permanent injunctive relief and declaratory judgment, remain part of the case.

The Eighth Circuit faced a similar set of facts in *ON Equity Sales Co. v. Pals*, 528 F.3d 564 (8th Cir. 2008). There, the appellant also argued that the appellee was not a customer under the arbitration rules of the National Association of Securities Dealers ("NASD")—the predecessor to FINRA. *Id.* at 567. The appellant argued that the district court erred in denying its motion for a preliminary injunction against proceeding with arbitration and granting the appellee's motion to compel arbitration. *Ibid*. The Eighth Circuit held that Section 16 of the FAA barred its review. *Id.* at 567–68. Just as in this case, "the district court . . . did not dismiss all of the claims. [Appellant's] claims for declaratory and permanent injunctive relief were not decided by the district court and remain pending." *Id*. at 569.

That set of circumstances contrasts with those found in *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733 (9th Cir. 2014). There, the appellant sought a preliminary injunction against FINRA arbitration, arguing that the appellee was not a customer under FINRA Rule 12200. *Id*. at 738. The district court disagreed and denied the injunction. *Ibid*. But—critically—"[f]ollowing the district court's ruling, the parties agreed that there was nothing further to litigate, and the district

court entered final judgment in favor of [the appellee]." *Ibid*. The Ninth Circuit therefore proceeded as if it had jurisdiction over the appeal.

That is not the case here. The requests for a declaratory judgment and a permanent injunction, as well as the counterclaims, were not resolved by the denial of the preliminary injunction. Because those claims persist, the district court's denial of the motion for a preliminary injunction was not an appealable final order but an unappealable interlocutory order.

In response to all this, Valentine leans on the fact that § 16(b) bars review only of interlocutory orders enjoining an arbitration "subject to" to the FAA. According to Valentine, the FINRA arbitration is not subject to the FAA because the FAA only governs arbitrations where there is a written agreement to arbitrate, and no such agreement exists here.

We disagree. The relevant "agreement" to arbitrate is between Valentine and FINRA, not Valentine and HWLC. Valentine does not dispute that she is a member of FINRA and agreed, by virtue of the FINRA Code, to arbitrate at least certain kinds of disputes with customers pursuant to FINRA Rule 12200. "Numerous courts have held that FINRA Rule 12200 constitutes an enforceable arbitration agreement within the meaning of the FAA." *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 100 n.62 (3d Cir. 2018). And we have previously observed that the NASD code is an "agreement in writing" sufficient to invoke the FAA. *Liberte Cap. Grp., LLC v. Capwill*, 148 F. App'x 413, 416 (6th Cir. 2005). Because the NASD rules are "substantively equivalent" to the FINRA rules, we treat them the same. *See Wilson-Davis & Co., Inc. v. Mirgliotta*, 721 F. App'x 425, 428 n.2 (6th Cir. 2018).

Valentine's argument in effect recasts the merits. The district court disagreed with Valentine's argument that HWLC was not her customer and held that she had "agreed" to arbitrate with it. That decision may have been wrong, and, indeed, we have serious concerns about the

soundness of the district court's opinion and the way it tracked, nearly-word-for-word, the proposed findings of fact and conclusions of law submitted by HWLC. Nevertheless, Valentine's argument that HWLC was not *actually* her customer is irrelevant to whether arbitration under the FINRA Code is covered by the FAA and its provisions regarding appellate jurisdiction. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 628 (2009) (stating that jurisdiction over an appeal under the FAA "must be determined by focusing upon the category of order appealed from, rather than upon the strength of the grounds for reversing the order.") (quoting *Behrens v. Pelletier*, 516 U.S. 299, 311 (1996)). To hold otherwise would mean that any time a party argues that it did not agree to arbitrate, that arbitration is not covered by the FAA.

Valentine provides no authority suggesting that arbitration under the FINRA Code—whether or not it has rightfully been invoked—is not an arbitration "subject to [the FAA]" within the meaning of § 16(b)(4). The order she appeals, therefore, is both (1) interlocutory and (2) one refusing to enjoin an arbitration subject to the FAA. Section 16(b) bars us from hearing appeals of those orders. We therefore must dismiss this case for lack of jurisdiction, while expressing no opinion on whether Valentine is correct that her claims do not belong in FINRA arbitration.

**DISMISSED.**