**AFFIRM; and Opinion Filed August 14, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00120-CV

### BIG BASS TOWING CO., Appellant
### V.
### STEPHEN AKIN, Appellee

### On Appeal from the County Court at Law No. 1
### Dallas County, Texas
### Trial Court Cause No. CC-12-02361-A

## OPINION

Before Justices Francis, Evans, and Richter[1]
Opinion by Justice Richter

Big Bass Towing Company appeals the trial court's denial of its motion to compel arbitration and stay litigation proceedings. In one issue, Big Bass argues the trial court abused its discretion in denying the motion. We affirm.

### BACKGROUND

Stephen Akin, a tow truck driver employed by Big Bass, suffered multiple fractures and dislocations of his back and pelvis along with irreversible neurological injuries when a wrecked vehicle he was repairing rolled over and crushed him. Big Bass is a non-subscriber to the Texas Workers' Compensation Act, but it does have an "Occupational Injury Employee Benefit Plan," which provides payment for "medical care, salary continuance, and certain death and

---

[1] The Hon. Martin Richter, Retired Justice, sitting by assignment.

dismemberment benefits arising from accidental injuries within the course and scope of employment." It is uncontested that Akin received notice of this plan and accepted benefits under it.

Akin filed suit against Big Bass, alleging that it was negligent in failing to provide him with a reasonably safe place to work and vicariously liable for the negligence of a co-employee. Big Bass responded by both raising the affirmative defense of arbitration in its answer and filing a motion to compel arbitration and stay litigation proceedings. It cited an arbitration agreement and argued Akin acknowledged and agreed to the existence of a binding arbitration policy to resolve all workplace injury and negligence disputes; it further argued the filing of this lawsuit was a breach of that agreement. Akin moved for partial summary judgment on Big Bass's arbitration defense claim, arguing in relevant part that he had no notice or knowledge of any agreement to arbitrate. After a hearing, the trial court denied Big Bass's motion to compel arbitration, and this interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West Supp. 2012).

## DISCUSSION

In a single issue, Big Bass argues that the trial court erred in denying its motion to compel arbitration. It contends the Federal Arbitration Act (FAA) governs this issue and mandates that this lawsuit be referred to arbitration because (1) Akin had notice of what Big Bass refers to as the "Occupational Injury Employee Benefit Plan and Mutual Agreement to Arbitrate" and (2) Akin ratified the "Occupational Injury Employee Benefit Plan and Mutual Agreement to Arbitrate" when he accepted benefits pursuant to the plan.

### Standard of Review

In a matter subject to the FAA, section 51.016 of the Texas Civil Practice and Remedies Code allows for an interlocutory appeal of an order denying arbitration. *See id.* We apply an

abuse of discretion standard of review respecting interlocutory appeals under this section. *Sidley Austin Brown & Wood, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 862–63 (Tex. App.— Dallas 2010, no pet.). Under this standard, we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding); *Weekley Homes, L.P. v. Rao*, 336 S.W.3d 413, 418 (Tex. App.—Dallas 2011, pet. denied). Whether an arbitration agreement is enforceable is subject to de novo review. *In re Labatt Food Serv.*, 279 S.W.3d at 643.

## Applicable Law

A party attempting to compel arbitration under the FAA must (1) establish the existence of a valid arbitration agreement, and (2) show that the claims asserted are within the scope of the agreement. *Weekley Homes*, 336 S.W.3d at 419 (quoting *J.B. Hunt Transp., Inc. v. Hartman*, 307 S.W.3d 804, 809 (Tex. App.—San Antonio 2010, no pet.)). To establish a valid arbitration agreement exists, an employer must show the employee received notice of the employer's arbitration policy and accepted it. *See In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 162 (Tex. 2006) (orig. proceeding); *see also Murdock v. Trisun Healthcare, LLC*, No. 03-10-00711-CV, 2013 WL 1955767, at \*3 (Tex. App.—Austin May 9, 2013, no. pet. h.) (mem. op.); *HSS Sys., L.L.C. v. Lucan*, No. 03-10-00761-CV, 2011 WL 2297716, at \*3 (Tex. App.—Austin June 9, 2011, no pet.) (mem. op.). When determining whether an employee received notice of a binding arbitration agreement, we do not confine the "notice analysis" to the underlying agreement, but to all communications between the employer and employee. *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d at 162. An at-will employee who receives notice of an employer's arbitration policy and continues working with knowledge of the policy accepts the terms as a matter of law. *Id.* at 163.

The question of whether the parties have entered into a binding agreement to arbitrate is one of the inquiries we undertake in an interlocutory appeal of the denial of a motion to compel arbitration. *Weekley Homes*, 336 S.W.3d at 418 (quoting *May v. Higbee Co.*, 372 F.3d 757, 763 (5th Cir. 2004)). Although the Texas Supreme Court has repeatedly expressed a strong presumption favoring arbitration, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *Id.* at 419 (quoting *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003)). Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. *Roe v. Ladymon*, 318 S.W.3d 502, 510 (Tex. App.—Dallas 2010, no pet.) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). The FAA does not require parties to arbitrate when they have not agreed to do so. *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 192 (Tex. 2007).

### Is there an "Occupational Injury Employee Benefit Plan and Mutual Agreement to Arbitrate"?

Before determining whether Akin received notice of the arbitration agreement or ratified it by accepting benefits, we must first determine the relationship between the occupational injury benefit plan and the arbitration agreement. Throughout its briefing and affidavits, Big Bass consistently refers to the "Occupational Injury Employee Benefit Plan and Mutual Agreement to Arbitrate" as if it is a single document and argues that Akin accepted benefits under this plan, had this document available for his records, and ratified the document when he accepted benefits. For example, Big Bass argues "[t]he Court should compel [Akin] to arbitrate his claims because [Akin] had notice that [Big Bass] had an Occupational Injury Employee Benefit Plan and Mutual Agreement to Arbitrate . . . ." It also argues that Akin ratified the arbitration agreement "by accepting medical and indemnity benefits pursuant to the Occupational Injury Employee Benefit Plan and Mutual Agreement to Arbitrate." Big Bass's continued reference to the "Occupational

–4–

Injury Employee Benefit Plan and Mutual Agreement to Arbitrate" suggests Akin's undisputed notice of the occupational injury benefit plan and acceptance of benefits under this plan may also be considered notice or acceptance of the arbitration agreement.

Akin argues Big Bass's reference to the "Occupational Injury Employee Benefit Plan and Mutual Agreement to Arbitrate" is misleading. He claims these are two separate and distinct documents that are unrelated to each other. Akin does not deny he received benefits under the occupational injury benefit plan; he denies receiving benefits under an arbitration agreement.

Both Big Bass and Akin included copies of the occupational injury benefit plan and arbitration agreement in the record. Akin presented them as separate documents and as different exhibits. Big Bass presented them as a single document in a single exhibit.

The first page of the occupational injury benefit plan is a title page for the "Occupation Injury Employee Benefit Plan." It contains no mention of a "Mutual Agreement to Arbitrate." The title page contains an effective date of March 18, 2009 and describes itself as the "Official Plan Document." The document is twenty-eight pages long, and each page is numbered. The entire document is formatted in a single-column layout. The document contains a footer on the bottom left side of every page stating, "OCCUPATIONAL INJURY EMPLOYEE BENEFIT PLAN." The last five pages (numbered pages twenty-four through twenty-eight) are an appendix entitled "Appendix A Privacy of Participant Health Information." In the version of the document provided by Big Bass, the "Mutual Agreement to Arbitrate" follows immediately after this appendix. This arbitration document is written in a different font from the occupational injury benefit plan. Each page of the arbitration agreement is formatted in a two-column layout as opposed to the single-column layout of the occupational injury benefit plan. The arbitration document is five pages long, each page is numbered, and its first page begins at page one. It also contains a different footer, "Copyright 2003 Gibson, McClure, Wallace & Daniels, L.L.P.,"

running throughout the document. Nowhere does the phrase "Occupational Injury Employee Benefit Plan and Mutual Agreement to Arbitrate" appear in either document.

Substantively, the arbitration agreement states that it does not apply to "[c]laims for benefits under the Company's Employee Injury Benefit Plan." The occupational injury benefit plan does not contain an arbitration clause, but it does reference arbitration in a few sections. Specifically, it requires that if a claim for benefits is denied by the "plan administrator," the administrator is required to notify the participant that the dispute "shall then be submitted to non-binding arbitration." Also, it states that "if the appeal of the original decision [denying a claim] is denied upon review and upon arbitration, the Participant shall have the right to bring a civil action against the Plan under [ERISA]."

Big Bass makes three arguments why these two documents are related. First, it argues they both have an effective date of March 18, 2009. Second, Big Bass points to a section of the arbitration agreement that it argues references the occupational injury benefit plan. Specifically, the arbitration agreement states that "[i]n addition to any other consideration that may exist for the agreement to arbitration, each party's mutual promise to resolve claims and controversies by arbitration in accordance with the provisions of this Agreement constitutes consideration for this Agreement." Big Bass argues the medical and indemnity benefits Akin received were part of the consideration referred to by the arbitration agreement. Third, Big Bass argues both the occupational benefits injury plan and the arbitration agreement are related because they were discussed together at the same meeting.

Big Bass's argument lacks merit. The fact that two documents have the same effective date does not imply they are the same document or otherwise related. Nor is the general reference to consideration in the arbitration agreement sufficient to establish that the documents are related. We conclude the arbitration agreement and the occupational injury benefit plan are

separate documents, and for purposes of notice, any reference to the occupational benefits injury plan did not provide notice of the arbitration agreement. Stated differently, Big Bass did not have a single "Occupational Injury Employee Benefit Plan and Mutual Agreement to Arbitrate;" it had an occupational injury employee benefit plan and a separate arbitration agreement. Any notice Akin thus received of the occupational injury benefit plan is insufficient by itself to show he had notice of the arbitration agreement, and Big Bass cannot rely on the uncontested fact that Akin had notice of the occupational injury benefit plan and accepted benefits under this plan to show he also had notice of the arbitration agreement.

### Did Akin have Notice of the Mutual Agreement to Arbitrate?

We next consider whether Big Bass met its burden of showing Akin received notice of the arbitration agreement. *See Weekley Homes*, 336 S.W.3d at 419 (party attempting to compel arbitration must show valid arbitration agreement existed); *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d at 162 (to show valid arbitration agreement exists, must show employee received notice of arbitration policy). Akin claims he first became aware of the arbitration agreement nine months after filing this lawsuit. He also claims he had not seen or heard of the arbitration agreement previously, he did not sign it, and he was never provided a copy of the agreement.

It is uncontested that Akin did not sign the arbitration agreement. Big Bass, however, contends this is irrelevant because the FAA does not require that an arbitration agreement be signed and Akin had notice of the agreement. As evidence that Akin had notice of the arbitration agreement, Big Bass relies on two documents. The first document is a copy of rules and regulations entitled "Drivers of Martin Services, Inc. d/b/a Big Bass Towing," which Akin signed on September 11, 2009. By signing the document, Akin agreed to abide by the rules and regulations contained in that document. The document stated that Big Bass "does not have workers compensation insurance coverage to protect me from damages because of work related

illness or injury. However, you may have rights under the common law of Texas. We do have an accident policy that covers work related injuries." Akin agrees that the document's reference to the accident policy provided him notice of the occupational injury benefit plan. The document made no mention of an arbitration agreement, however, and we have already concluded reference to the occupational injury benefit plan did not provide Akin with notice of an arbitration agreement.

The second document Big Bass relies on is the affidavit of Carla Binder, the manager and "custodian of records" for Big Bass, which Big Bass attached to its motion to compel arbitration. In that affidavit, Binder alleged that "[a]t the time [Akin] signed the document titled Drivers of Martin Services, Inc. d/b/a big Bass Towing, the contents of the March 18, 2009 Occupational Injury Benefit Plan and Mutual Agreement to Arbitrate were discussed during a meeting with Big Bass Towing." She also alleged the "Occupational Injury Employee Benefit Plan and Mutual Agreement to Arbitrate" was available to Akin "for inspection and review and was available for [Akin] to take home as part of his personal records."

Akin argued to both the trial court and this Court that Binder's affidavit is not competent evidence because it does not state any basis for her personal knowledge. He maintains Binder did not state she was present at the meeting with Big Bass when the occupational injury benefit plan or the arbitration agreement were discussed. She also did not state that Akin was at the meeting or with whom Akin met.

An affidavit must disclose the basis on which the affiant has personal knowledge of the facts asserted. *Radio Station KSCS v. Jennings*, 750 S.W.2d 760, 762 (Tex. 1988); *Stone v. Midland Multifamily Equity REIT*, 334 S.W.3d 371, 375 (Tex. App.—Dallas 2011, no pet.). Affidavits not based on personal knowledge are not competent evidence; the affidavit must affirmatively show a basis for such knowledge. *See Southtex 66 Pipeline Co. v. Spoor*, 238

S.W.3d 538, 542–43 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). An affiant's position or job responsibilities can qualify the affiant to have personal knowledge of facts and establish how the affiant learned of the facts. *Stone*, 334 S.W.3d at 375. In this case, Binder fails to explain how her position with Big Bass as manager and "custodian of records" affords her personal knowledge of the facts to which she attests. *See id.* at 377. She claims the contents of the "Occupational Injury Benefit Plan and Mutual Agreement to Arbitrate" were discussed during a meeting with Big Bass, but she does not say she attended the meeting, what the substance of the discussion at the meeting was, how she otherwise might have come to know the substance of the meeting, who attended the meeting, or—perhaps most importantly—whether Akin was at the meeting. We conclude that Binder's affidavit fails to establish her personal knowledge of the meeting and did not constitute competent evidence Akin had notice of the arbitration agreement.

Big Bass also argues Akin had notice of the arbitration agreement because Binder's affidavit demonstrates the "Occupational Injury Employee Benefit Plan and Mutual Agreement to Arbitrate" was available for Akin to take home as part of his personal records. Binder's affidavit lacks any underlying information to show Binder's knowledge that the document was available for Akin's review; it thus amounts to no evidence. *See Southtex 66 Pipeline Co.*, 238 S.W.3d at 542–43. Big Bass also cites no case law for the proposition that because a document was "available" for inspection and review, an employee had notice of the document. The fact that a document was "available" for inspection does not demonstrate that Akin had notice of the document: Binder's affidavit provides no evidence that Akin had sufficient awareness of the arbitration agreement in order to know to ask to inspect it or take it home for his personal records.

Lastly we note that Akin denies he was informed about an arbitration agreement when he signed the document entitled Drivers of Martin Services, Inc. d/b/a big Bass Towing; he never received an arbitration agreement before nine months after filing suit; and he otherwise had no notice or knowledge about its existence. As we stated above, we defer to the trial court's resolution of factual controversies when, as here, they are supported by evidence. *See In re Labatt Food Serv., L.P.*, 279 S.W.3d at 643. Accordingly, the trial court did not abuse its discretion when it implicitly found that Akin did not have notice of the arbitration agreement.

### Did Akin Ratify the Mutual Agreement to Arbitrate?

Finally, Big Bass argues the trial court should have granted the motion to compel arbitration because Akin ratified the arbitration agreement by accepting medical and indemnity benefits pursuant to the "Occupational Injury Employee Benefit Plan and Mutual Agreement to Arbitrate." Ratification occurs if a party recognizes the validity of a contract by acting or performing under the contract or by otherwise affirmatively acknowledging it. *Barrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122, 146 (Tex. App.—Corpus Christi 2006, pet. denied). In other words, "if a party by its conduct recognizes a contract as valid, having knowledge of all relevant facts, it ratifies the contract." *Id.*

Big Bass's failure to demonstrate Akin had notice of the arbitration agreement also disposes of its claim that Akin ratified the arbitration agreement by accepting medical and indemnity benefits. In order for ratification to be applicable it must be shown that the person ratifying did so with knowledge of the facts. *Norman v. Safway Products, Inc.*, 404 S.W.2d 69, 71 (Tex. Civ. App.—Dallas 1966, no writ). Here, there is nothing in the record to show Akin had any knowledge of the arbitration agreement when he accepted benefits under the occupational injury benefit plan. Big Bass thus failed to show that Akin ratified the arbitration agreement by accepting medical and indemnity benefits.

–10–

**CONCLUSION**

We conclude the trial court did not abuse its discretion by denying Big Bass's motion to compel arbitration.  We overrule Big Bass's sole issue and affirm the trial court's order.

/Martin Richter/
MARTIN RICHTER
JUSTICE, ASSIGNED

130120F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BIG BASS TOWING CO., Appellant

No. 05-13-00120-CV       V.

STEPHEN AKIN, Appellee

On Appeal from the County Court at Law
No. 1, Dallas County, Texas
Trial Court Cause No. CC-12-02361-A.
Opinion delivered by Justice Richter.
Justices Francis and Evans participating.

        In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.
        It is **ORDERED** that appellee STEPHEN AKIN recover his costs of this appeal from
appellant BIG BASS TOWING CO.


Judgment entered this 14th day of August, 2013.



                                        /Martin Richter/
                                        MARTIN RICHTER
                                        JUSTICE, ASSIGNED