

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00040-CV

_____

HAWK STEEL INDUSTRIES, INC., Appellant

V.

WILLIE JAMES STAFFORD, JR., Appellee

On Appeal from the 236th District Court
Tarrant County, Texas
Trial Court No. 236-302552-18

Before Sudderth, C.J.; Gabriel and Birdwell, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant Hawk Steel Industries, Inc., appeals the trial court's order denying its request to compel arbitration. Because Hawk failed to show that Stafford's claims are subject to a valid arbitration agreement, we hold that the trial court did not abuse its discretion and affirm the trial court's order.

## Background

Stafford, an employee of Hawk, a nonsubscriber to workman's compensation, filed suit against Hawk alleging that he suffered an on-the-job injury while unloading a truck. Hawk answered and moved to compel arbitration. In support of its motion, Hawk attached a business records affidavit that authenticated three documents as records made and retained by Hawk in the regular course of business:

(1) a document entitled "Receipt of SPD and Mutual Agreement to Arbitrate Acknowledgment" (Receipt and Acknowledgment),

(2) the "Summary Plan Description" of Hawk's occupational injury employee benefit plan (SPD), and

(3) a "Mutual Agreement to Arbitrate" (MAA).

The Receipt and Acknowledgment states in full:

> ### RECEIPT OF SPD AND MUTUAL AGREEMENT TO ARBITRATE ACKNOWLEDGEMENT
>
> **RECEIPT OF MATERIALS**. By my signature below, I acknowledge that I have received and read (or had the opportunity to read) the Summary Plan Description (the "SPD") for the **Hawk Steel Industries, Inc.** Occupational Injury Employee Benefit Plan, **effective March 1, 2008**.

2

**ARBITRATION**. I also acknowledge that this SPD includes a mandatory company policy requiring that certain **claims or disputes relating to an on-the-job injury (that cannot otherwise be resolved between the Company and me) must be submitted to an arbitrator,** rather than a judge and jury in court. I understand that by receiving this SPD and becoming employed (or continuing my employment) with the Company at any time on or after **March 1, 2008,** I am accepting and agreeing to comply with these arbitration requirements. I understand that the Company is also accepting and agreeing to comply with these arbitration requirements. All covered claims brought by my spouse, children, beneficiaries, representatives, executors, administrators, guardians, heirs or assigns are also subject to the SPD's arbitration policy, and any decision of an arbitrator will be final and binding on such persons and the Company. [emphasis added]

Except for the title of the document, the Receipt and Acknowledgment does not reference any document entitled "Mutual Agreement to Arbitrate." The SPD, which is specifically referenced, does not address arbitration for on-the-job injuries.[1]

Hawk argues that the terms of the arbitration agreement are set out in the MAA. The MAA filed by Hawk provides for an effective date of March 1, 2008, and would purport to cover on-the-job-injury disputes. However, Hawk provided no evidence that the MAA it produced was the same MAA that is referenced in the title of the Receipt and Acknowledgement or the MAA that governs this dispute. Neither Hawk nor Stafford are identified anywhere in the MAA. Instead, the MAA defines the agreement as between the "Company" and the "Claimant" and defines "Company" as an entity listed on an attached "Schedule A." But there are no

---

[1]The only time arbitration is mentioned in the SPD is in reference to filing suit under section 502(a) of ERISA. *See* 29 U.S.C.A. § 1132(a)(1)(B).

schedules attached to the version of the MAA submitted by Hawk in support of its motion.

While Stafford admitted that he had signed the Receipt and Acknowledgment and received the SPD, he denied ever having received or been notified of the existence of the MAA. Stafford also asserted that Hawk had objected to and refused to answer Stafford's discovery requests seeking information about Stafford's receipt of the MAA and whether the MAA was part of the SPD.

At the hearing on Hawk's motion to compel arbitration, no witnesses testified and no additional evidence was offered or admitted. After the trial court denied Hawk's motion to compel arbitration, this appeal followed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.098.

## Discussion

Although framed as two separate issues, Hawk's argument on appeal is that the trial court abused its discretion by denying its motion to compel arbitration because Stafford was bound by the terms of the MAA that was attached to Hawk's motion. We disagree. Hawk neither met its evidentiary burden of establishing the contents of the MAA referenced in the Receipt and Acknowledgement nor established that Stafford's claims could be subject to arbitration based solely on the arbitration paragraph of the Receipt and Acknowledgment. Thus, the trial court did not abuse its discretion by denying the motion to compel arbitration.

4

## I. Standard of review and applicable law

We review a trial court's ruling on a motion to compel arbitration for an abuse of discretion. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009). We defer to the trial court's factual determinations but review legal questions de novo. *Doe v. Columbia N. Hills Hosp. Subsidiary, L.P.*, 521 S.W.3d 76, 80 (Tex. App.—Fort Worth 2017, pet. denied). Whether a valid arbitration agreement exists is a question of law that we review de novo. *Id.* at 80–81.

In the trial court, motions to compel arbitration are treated somewhat similarly to motions for summary judgment. *Id.* at 81 (citing *In re Jebbia*, 26 S.W.3d 753, 756–57 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 268–69 (Tex. 1992)). The same evidentiary standards apply, and the party alleging that an arbitration agreement exists must present summary proof that the dispute is subject to arbitration (through affidavits, pleadings, discovery, or stipulations), and the party resisting arbitration may contest the opponent's proof or present evidence supporting the elements of a defense to enforcement. *Id.* If the evidence raises a genuine issue of material fact, the trial court must conduct an evidentiary hearing to resolve the factual dispute. *Id.* (citing *Jack B. Anglin Co.*, 842 S.W.2d at 269; *In re Estate of Guerrero*, 465 S.W.3d 693, 700 (Tex. App.—Houston [14th Dist.] 2015, pet. denied)).

As the party seeking to compel arbitration, Hawk bore the burden to establish the existence of a valid arbitration agreement. *In re AdvancePCS Health L.P.*, 172

S.W.3d 603, 605 (Tex. 2005). A valid arbitration agreement exists if the employee (1) received notice of the policy and (2) accepted it. *In re Dallas Peterbilt, Ltd.*, 196 S.W.3d 161, 162 (Tex. 2006). Generally, there is a strong presumption in favor of arbitration, but that presumption does not apply to the initial determination of whether a valid arbitration agreement exists. *J.M. Davidson v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). While an arbitration agreement need not be in any particular form, it must clearly appear that the parties intended to submit their dispute to arbitration and to be bound by that decision. *Wetzel v. Sullivan, King & Sabom, P.C.*, 745 S.W.2d 78, 81 (Tex. App.—Houston [1st Dist.] 1988, no pet.).

Once the existence of a valid arbitration agreement has been established, we apply traditional contract principles to interpret the agreement. *J.M. Davidson*, 128 S.W.3d at 227. We give the language used its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated. *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987) (citing *Fox v. Thoreson*, 398 S.W.2d 88, 92 (Tex. 1966)).

## II. No evidence of notice or receipt of MAA

Hawk argues that the parties agreed to arbitrate claims related to on-the-job injuries and that Stafford's signature on the Receipt and Acknowledgment clearly establishes that Stafford received and accepted the terms of the MAA. Yet, other than in the title of the document itself, the Receipt and Acknowledgment makes no reference to a document entitled "Mutual Agreement to Arbitrate."

To interpret the Receipt and Acknowledgment, we need look no further than the plain words used by the parties. *See Reilly*, 727 S.W.2d at 529. And in so doing, we must harmonize and give meaning to all terms used in an agreement and avoid rendering any term meaningless. *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002).

The title of the one-page Receipt and Acknowledgment is "Receipt of SPD and Mutual Agreement to Arbitrate Acknowledgment." Hawk argues that the title should be read to expressly reference Stafford's receipt of the MAA as a separate document. But we must read the title in the context of the content of the document. *See Stine*, 80 S.W.3d at 589; *see also RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 121 (Tex. 2015) (explaining that while courts may consider the title of a contract provision or section to interpret a contract, "the greater weight must be given to the operative contractual clauses of the agreement"). Below the title, the first paragraph is labeled "Receipt of Materials" and states that Stafford has received and read the SPD, which is a capitalized, defined term in the document. It does not state that Stafford has received the MAA; in fact, it makes no mention of the MAA at all or attempt to define the MAA.

To make up for this, Hawk relies on the second paragraph, titled "Arbitration." It states:

> I also acknowledge that this SPD includes a mandatory company policy requiring that certain claims or disputes relating to an on-the-job injury (that cannot otherwise be resolved between the Company and me) must be submitted to an arbitrator, rather than a judge and jury in court. I understand that by receiving this SPD and becoming employed (or

7

> continuing my employment) with the Company at any time on or after <u>March 1, 2008</u>, I am accepting and agreeing to comply with these arbitration requirements.

Certainly in this paragraph Stafford acknowledges that the SPD contains an arbitration provision as to certain claims or disputes relating to on-the-job injuries. And in the sentence that follows, Stafford acknowledges that he agrees to comply with the arbitration requirements in the SPD. But the SPD actually contains no provision regarding arbitration of injury claims.

The SPD is 21 pages long and contains no reference to the MAA. The only mention of arbitration within the SPD is a provision that if an employee disagrees with a determination of ERISA benefits, the disagreement is subject to nonbinding arbitration prior to filing a civil action. The SPD refers to and includes only one appendix, which provides notice in compliance with the Health Information Portability and Accountability Act (HIPAA).

Nor does the MAA contain any reference to the SPD. And the MAA and the SPD do not appear to be part of the same document. The format of the SPD differs from that of the MAA: the SPD is formatted in a single column while the MAA is written in two columns; the SPD is written in a different font than the MAA; section headings in the SPD are in bold, capitalized letters and centered on the page, while the section headings in the MAA are underlined and left-justified; every page of the SPD—including the appendix—includes a footer that states, "Summary Plan Description of the Occupational Injury Employee Benefit Plan," while the MAA's

8

footer states "Copyright 2003 Gibson, McClure, Wallace & Daniels, L.L.P." Finally, the MAA is completely divorced from the SPD, making no mention of the SPD, of Hawk, or of Stafford. While it identifies a "Company" and defines it as the entity set forth on "Schedule A" to the MAA, no such schedule was attached to the version of the MAA that was filed as part of Hawk's motion to compel arbitration. Indeed, the only commonality the SPD and MAA appear to share is their effective dates of March 1, 2008.

Stafford agreed that "by receiving th[e] SPD and becoming employed (or continuing [his] employment) with the Company at any time on or after March 1, 2008, [he was] accepting and agreeing to comply with these arbitration requirements." In other words, Stafford agreed to accept and comply with the ERISA arbitration provisions provided for in the SPD. But Stafford's agreement as to the SPD provides no evidence that he agreed to or had any notice of the MAA which was offered by Hawk in support of its motion to compel arbitration.

Other than offering the MAA into evidence through a business records affidavit, Hawk provided no additional evidence that Stafford received or otherwise had notice of the MAA in question. *See Peterbilt*, 196 S.W.3d at 162. The business records affidavit made no attempt to establish that Stafford received or was notified of the existence of the MAA. Nor did Hawk elicit any testimony at the hearing in an

9

attempt to establish Stafford's notice or knowledge of the MAA.[2]  Hawk thus failed to

meet its burden of proof that Stafford received the MAA.  *See Big Bass Towing Co. v.*

*Akin*, 409 S.W.3d 835, 840 (Tex. App.—Dallas 2013, no pet.) (rejecting argument that

employee had notice of arbitration agreement based on affidavit which claimed that

agreement was discussed at a company meeting but provided no basis for the affiant's

personal knowledge and did nothing to establish employee attended meeting).

These facts are strikingly similar to those in *Big Bass Towing*, a case decided by

our sister court in Dallas.  In that case, the employer argued that the employee

acknowledged and agreed to the existence of a binding arbitration policy to resolve all

workplace injury disputes.  *Id.* at 837.  The employer argued that its "Occupational

Injury Employee Benefit Plan" (of which the employee did not dispute he had notice)

and "Mutual Agreement to Arbitrate" were one document.  *Id.* at 839.  The Dallas

court determined that the employer had not established that the Mutual Agreement to

Arbitrate was part of the Occupational Injury Employee Benefit Plan and noted that

the employee benefit plan made no mention of the agreement to arbitrate; that the

only reference to arbitration in the benefit plan related to ERISA disputes; that the

benefit plan was formatted in a single column whereas the arbitration agreement was

formatted in a two-column layout; that the benefit plan utilized a different font than

the arbitration agreement; that the benefit plan included a footer that stated,

---

[2]In fact, Stafford testified through his affidavit that he had "never seen, read[,] or received a copy of the [MAA]."

"Occupational Injury Employee Benefit Plan," whereas the arbitration agreement included a footer that stated, "Copyright 2003 Gibson, McClure, Wallace & Daniels, L.L.P.";[3] and that the last five pages of the benefit plan were an appendix regarding HIPAA requirements. *Id.* at 839–40. The employer also argued that the two documents were related because they both had the same effective dates. *Id.* at 840. The Dallas court summarily rejected this argument, stating, "The fact that two documents have the same effective date does not imply they are the same document or otherwise related." *Id.* The court concluded that the arbitration agreement and the benefit plan were separate documents, and "for purposes of notice, any reference to the occupational benefits injury plan did not provide notice of the arbitration agreement." *Id.*

Likewise, we conclude that any reference in the Receipt and Acknowledgment to the SPD did not provide notice of the MAA. Hawk offered no evidence at trial that would support a conclusion that the MAA was part of the SPD and thereby incorporated into the Receipt and Acknowledgment.[4] Their matching effective dates do not alone conclusively render them as one document. *See id.* We therefore reject Hawk's argument that the Receipt and Acknowledgment established that Stafford agreed to or had notice of the terms of the MAA.

---

[3]It appears the same form arbitration agreement was used in both cases.

[4]We further note that Hawk made no effort to show that the version of the MAA submitted at trial was still in effect at the time of Stafford's injury.

11

## III. Ambiguous arbitration paragraph

To the extent that Hawk argues that the arbitration paragraph of the Receipt and Acknowledgment itself constitutes an arbitration agreement that covers Stafford's claims, that argument fails because that paragraph is ambiguous as to which claims are subject to arbitration. The question of arbitrability of a claim or dispute is a threshold matter for the court to decide. *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 120 (Tex. 2018) (reiterating that parties may agree to delegate the issue of arbitrability to an arbitrator but that the "default rule" leaves that determination to the court). The arbitration paragraph provides that the parties would arbitrate "*certain* claims or disputes relating to an on-the-job injury." [Emphasis added.]. The word "certain" serves to limit the scope of on-the-job claims and disputes that would be subject to arbitration. Yet, the document is silent as to which "certain" on-the-job claims and disputes would be subject to arbitration. By failing to provide further evidence that the parties' intent to arbitrate "certain" on-the-job-injury claims included those claims asserted by Stafford, Hawk has failed to meet its burden to show that Stafford's claims in this lawsuit were subject to an arbitration agreement. *J.M. Davidson*, 128 S.W.3d at 231 ("While we generally favor arbitration agreements, we should not reflexively endorse an agreement so lacking in precision that a court must first edit the document for comprehension, and then rewrite it to ensure its enforceability."). We therefore hold that the trial court did not abuse its discretion by denying Hawk's motion to compel arbitration.

## Conclusion

Having held that Hawk has failed to establish that Stafford's claims are subject to a valid arbitration agreement, we affirm the trial court's order denying arbitration.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Delivered: August 15, 2019