**Opinion issued April 20, 2021**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-20-00437-CV

————————————

## CHG HOSPITAL BELLAIRE, LLC, Appellant

## V.

## SEKETA JOHNSON, Appellee

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-58375**

## MEMORANDUM OPINION

Seketa Johnson sued CHG Hospital Bellaire, LLC for tort claims seeking damages for injuries she sustained in an on-the-job accident. CHG-Bellaire moved to stay litigation, and the trial court denied the motion. CHG-Bellaire then petitioned this Court for a writ of mandamus, and we denied the petition. CHG-Bellaire moved

to compel arbitration under the Federal Arbitration (FAA), and the trial court denied the motion. CHG-Bellaire appealed, arguing that the trial court erred in denying its motion to compel arbitration because the parties entered into an enforceable arbitration agreement and Johnson's claims fell within the scope of claims covered by the agreement.

We affirm.

### Background

In August 2019, Johnson sued CHG-Bellaire for negligence, premises liability, and gross negligence, alleging that she had sustained injuries while training as a nurse at a hospital operated by CHG-Bellaire. Johnson and her trainer had to physically lift and adjust a "very heavy" patient on the bed because the hospital did not have the equipment ordinarily used to move patients. The trainer suddenly grabbed the bed sheets and began pulling the patient up the bed without first warning Johnson. Trying to catch the patient, Johnson quickly pulled the other side of the bed sheets and suddenly felt a pop in her spine followed by pain. She immediately stopped pulling the bed sheets and told her trainer about the injury.

Physicians treated Johnson's injuries and advised her to not lift anything weighing more than 10 pounds until she fully recovered. Although Johnson had not fully healed, CHG-Bellaire placed her back on regular rotation. Johnson told her superiors that she could not perform the same duties because lifting patients violated

her doctor's orders. Despite her explanation, CHG-Bellaire still required her to lift patients.

As Johnson was caring for a patient, the patient became dizzy and started to fall. Johnson rushed to prevent the patient from falling and she suddenly felt a "pull and pain" in her spine. Since the incidents, the pain in her back continued to worsen and prevented her from performing tasks she could perform before.

CHG-Bellaire answered the suit with special exceptions, a general denial, and affirmative defenses, asserting that Johnson's claims were subject to arbitration.

CHG-Bellaire then moved to stay the litigation. The trial court denied the motion, and CHG-Bellaire petitioned our Court for a writ of mandamus, requesting that we stay the litigation proceedings and compel arbitration. We denied the petition, noting a material defect:

> Relator asserts in its petition for writ of mandamus that it seeks relief from the trial court's denial of relator's "motion to stay litigation and compel arbitration" but the order attached to the petition does not refer to a motion to compel arbitration.

*In re CHB Hosp. Bellaire, LLC*, No. 01-20-00278-CV, 2020 WL 2026478, at *1 n.2 (Tex. App.—Houston [1st Dist.] Apr. 28, 2020, no pet.) (orig. proceeding) (per curiam).

Then, CHG-Bellaire moved to compel arbitration, followed by a supplemental motion to compel arbitration and an amended motion to compel arbitration. CHG-Bellaire argued that the parties had entered into an enforceable arbitration

agreement. It also argued that Johnson's claims for injuries during her employment fell within the scope of arbitral claims under the agreement.

CHG-Bellaire attached evidence to its motion to show the existence and scope of an enforceable arbitration agreement. The evidence included copies of the Employee Injury Benefit Plan (EIBP), the Employee Handbook, and the Employment Dispute Resolution Agreement (EDRA).

Section 5(a)(i) of the EIBP included a provision entitled "Mutual Agreement to Arbitrate," addressing the scope of the arbitration agreement and the claims covered by the agreement:

> This Agreement is mutual, covering all claims that Company or Claimant may have which arise from: Any injury suffered by Claimant while in the Course and Scope of Claimant's employment with Company, including but not limited to, claims for negligence, gross negligence, and all claims for personal injuries, physical impairment, disfigurement, pain and suffering, mental anguish, wrongful death, survival actions, loss of consortium and/or services, medical and hospital expenses, expenses of transportation for medical treatment, expenses of drugs and medical appliances, emotional distress, exemplary or punitive damages and any other loss, detriment or claim of whatever kind and character.

Section 508 of the EDRA included a provision articulating the claims covered by the arbitration agreement:

> The Company and you mutually consent and agree to the resolution by arbitration of all claims or disputes (Claim(s)), whether or not arising out of your employment (or its termination), that the Company may have against you or that you may have against the Company or its officers, directors, members, owners, shareholders, partners, employees or agents, past or present, in their capacity as such or otherwise. . . . The

4

Claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due, claims for breach of any contract or covenant (express or implied); tort claims; equitable claims; claims for discrimination (including, but not limited to, race, color, sex, religion, national origin, age, marital status, or medical condition, handicap or disability); claims for retaliation or harassment; all common law claims and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, except for claims identified below.

Section 509 of the EDRA excludes certain claims, including worker's compensation claims, from arbitration:

Claims you may have for workers' compensation, unemployment compensation, or state disability insurance benefits are not covered by this Agreement. . . . This Agreement also does not apply to any Claim that an applicable federal statute expressly states cannot be arbitrated.

Similarly, the Employee Handbook included the same arbitration provision referenced in the EDRA:

Agreeing to the Employment Dispute Resolution Program Agreement (Agreement) electronically or otherwise constitutes your agreement to be bound by the EDR Program. Likewise, the Company agrees to be bound by this same program. This mutual agreement to arbitrate claims means that both you and the Company are bound to use the EDR Program as the sole means of resolving covered claims and disputes and agree to forego any right either may have to a jury trial on issues covered by the EDR Program. However, no remedies that otherwise would be available to you or the Company in a court of law will be forfeited by virtue of the agreement to use and be bound by the EDR Program.

CHG-Bellaire attached two affidavits to its motion. The first was from I. Tai, Escalation Manager for Saba TalentSpace, an onboarding platform. Tai testified that newly hired CHG-Bellaire employees had to access, review, and acknowledge

5

several employment agreements containing arbitration provisions through the online platform. Each employee had to create a secure and unique username and password, which was encrypted and stored in the Saba database. After successfully entering login information, the system prompts the employee to complete the Employee Handbook course and the EIBP course. After the employee completes the course, the Saba database tests the employees understanding of the course content, generates transcript reports, and displays the employee's scores.

Tai also testified that Johnson created a username and password on Saba, accessed various employment documents, and completed the Employee Handbook course and the EIBP course on July 8, 2019. Saba's records showed that Johnson successfully answered all five questions in the Employee Handbook course and all three questions in the EIBP course.

CHG-Bellaire presented another affidavit from K. Mendez, the HR Director for the Cornerstone Healthcare Group Holdings, Inc., the parent company of CHG-Bellaire. Mendez testified that she was responsible for the "overall processes and implementation of policies involving documentation related to onboarding" new employees. Mendez confirmed that the Saba reports showed that Johnson had acknowledged reviewing the Employee Handbook, the EDRA, and the EIBP.

Johnson moved to strike the motion to compel arbitration, arguing that the arbitration agreements exclude workers' compensation claims and that evidence did

not establish that a valid arbitration agreement existed because she testified at her deposition that she could not recall acknowledging or agreeing to the arbitration agreements.[1]

CHG-Bellaire replied to Johnson's motion, contending that her claims fell within the scope of the arbitration agreements because she sought damages for personal injuries for her tort claims and did not allege any claims under the Texas Workers Compensation Act. It also contended that the evidence established the existence of enforceable arbitration agreements and that our denial of mandamus relief did not constitute "law of the case" or address the merits.

The trial court denied CHG-Bellaire's motion to compel arbitration without a hearing.

CHG-Bellaire appealed.[2]

## Arbitration Agreement

CHG-Bellaire contends that the trial court erred in denying its motion to compel arbitration because the parties entered into enforceable arbitration agreement

---

[1] She also argued that the issues were collaterally or judicially estopped by the trial court's denial of CHG-Bellaire's motion to stay litigation.

[2] The arbitration agreement here is governed by the FAA, and we have jurisdiction to review the trial court's denial of CHG-Bellaire's motion to compel arbitration under the FAA. *See* TEX. CIV. PRAC. & REM. CODE § 51.016; 9 U.S.C. §§ 16(a)(1)(C), 206; *Acad., Ltd. v. Miller*, 405 S.W.3d 152, 154 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

and the agreement covered Johnson's claims. In response, Johnson asserts that CHG-Bellaire failed to establish that a valid arbitration agreement existed because she testified under oath that, based on her personal recollection, she did not execute the purported agreement. She argues that the parties lacked a meeting of the minds to form a valid agreement. She also asserts that CHG-Bellaire failed to establish that the purported arbitration agreement covered her claims because the agreement explicitly excludes workers' compensation claims.

## A. Standard of review

"We review interlocutory appeals of orders denying motions to compel arbitration for an abuse of discretion, deferring to the trial court's factual determinations if they are supported by the evidence and reviewing questions of law de novo." *Valerus Compression Servs., LP v. Austin*, 417 S.W.3d 202, 207 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Under this standard, we will reverse the trial court's ruling only when "it acts in an arbitrary or unreasonable manner, without reference to any guiding rules or principles." *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (per curiam). We construe the record in a light favorable to support the trial court's ruling. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 233 (Tex. 2003); *In Estate of Guerrero*, 465 S.W.3d 693, 701 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (en banc).

**B.    Applicable law**

A court cannot order arbitration without an agreement to arbitrate. *See Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994) (per curiam). Thus, despite strong presumptions that favor arbitration, a valid agreement to arbitrate is a settled, threshold requirement to compel arbitration. *See In re Kellogg Brown & Root*, *Inc*., 166 S.W.3d 732, 737–38 (Tex. 2005) (orig. proceeding). The party moving to compel arbitration has the initial burden of proof to establish the arbitration agreement's existence and to show that the claims asserted against it fall within the arbitration agreement's scope. *Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013).

If the movant establishes that a valid arbitration agreement exists and that the claims fall within the agreement, a presumption arises in favor of arbitrating those claims and the party opposing arbitration has the burden to prove a defense to arbitration. *Royston, Rayzor, Vickery & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499–500 (Tex. 2015).

A trial court may determine whether to compel arbitration by solely relying on the parties' affidavits, pleadings, discovery, and stipulations. *In re MHI P'ship, Ltd.*, 7 S.W.3d 918, 922 (Tex. App.—Houston [1st Dist.] 1999, no pet.). An evidentiary hearing is not required before the trial court makes its determination. *In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 896 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

## C. Notice to form an agreement to arbitrate claims

Whether a valid arbitration agreement exists is a legal question that we resolve by ordinary contract principles. *See In re D. Wilson Const. Co.*, 196 S.W.3d 774, 781 (Tex. 2006); *Parker v. Schlumberger Tech. Corp.*, 475 S.W.3d 914, 922 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Thus, the party that is trying to enforce the arbitration agreement must show that it meets all requisite contract elements, including an offer, an acceptance, a meeting of the minds, each party's consent to the terms, and the execution and delivery of the contract with the intent that it be mutual and binding. *See S.C. Maxwell Family P'ship, Ltd. v. Kent*, 472 S.W.3d 341, 344–45 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *Montoya v. Glenny*, No. 04-08-00923-CV, 2009 WL 4981329, at *3 (Tex. App.—San Antonio Dec. 23, 2009, no pet.) (mem. op.).

Key to this case, the formation of the contract, requires a meeting of the minds on the contract's essential terms. The term "meeting of the minds" refers to the parties' "mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract." *Izen v. Comm'n For Lawyer Discipline*, 322 S.W.3d 308, 318 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). It is an essential element to the formation of a contract. *See APMD Holdings, Inc. v. Praesidium Med. Prof'l Liab. Ins. Co.*, 555 S.W.3d 697, 707 (Tex. App.—Houston [1st Dist.] 2018, no pet.). We examine and consider the entire writing to harmonize

and give effect to all the provisions of the contract so that none will be rendered meaningless. *See Webster*, 128 S.W.3d at 229.

CHG-Bellaire argues that its evidence—the EIBP, the Employee Handbook, the EDRA, and the two affidavits—establishes that Johnson reviewed the employment agreements containing the arbitration provision, correctly answered all questions at the end of the courses, and electronically agreed to arbitrate all covered claims, including her claims for negligence, gross negligence, and all claims seeking to recover damages for her personal injuries.

Johnson testified under oath that, based on her personal recollection, she did not recall seeing the EIBP or Employee Handbook:

| **Counsel**: | If I can—all right I've got something up here on the screen that says "Employee Injury Benefit Plan," and it's going to go through several slides. |
|---|---|
| **Johnson**: | Uh-huh. |
| **Counsel**: | And I want to go ahead and take you through this, and then I'm going to ask you whether you recall seeing this or not. Okay? |
| **Johnson**: | Okay. |
| **Counsel**: | It says—it has a question here. Do you see this? It says: "I understand that I must carefully read the document entitled 'Cornerstone Health Group Employee Injury Benefit Plan Arbitration Acknowledgement' on the previous slide." Do you recall seeing something like this? |
| **Johnson**: | No. |

**Counsel:** Okay. All right. Do you recall seeing something that says that you acknowledge and agree that selecting "I agree," clicking on the submit button below is binding like a written signature in ink and it talks about the Employee Injury Benefit Plan and the arbitration acknowledgment? Do you recall seeing that?

**Johnson:** No.

**Counsel:** All right. Next slide says: "I understand that if I do not understand any part of these instructions, I have the opportunity to contact my facility's human resource representative." Do you recall seeing this?

**Johnson:** No.

**Counsel:** And then after this, it says: "Submit quiz"?

**Johnson:** No.

* * *

**Counsel:** And I'll ask you if you recall reviewing—it's entitled "Cornerstone Employee Handbook, Code of Conduct and Arbitration Agreement."

**Johnson:** And this would have been online?

**Counsel:** This would have been online, yes, ma'am. It would have been in a slide format, and these are actually screenshots of the slides that I'm showing you.

**Johnson:** No.

**Counsel:** You don't recall—

**Johnson:** I don't recall this.

12

| **Counsel**: | —reviewing this one? |
| **Johnson**: | No. |

Johnson also testified that she disputed and could not recall reviewing the EIBP arbitration acknowledgment:

| **Counsel**: | Okay. If you look at the—I believe it's Exhibit 3. It says EDR agreement—I'm sorry. It says: "Employee Injury Benefit Plan, CHG - LATC/BH." And it says the date you completed it was July 8th? |
| **Johnson**: | Uh-huh. |
| **Counsel**: | All right. What I showed you is that entry right there, and it shows that you completed it on July 8th. Is that something that you dispute, actually having gone through and reviewed the employee injury benefit plan arbitration acknowledgment? |
| **Johnson**: | Do I dispute it? Yes, I don't recall it. |
| **Counsel**: | You don't recall it? |
| **Johnson**: | Yeah. So . . . |

CHG-Bellaire contends that Johnson's failure to recall acknowledging or otherwise executing the arbitration agreement cannot raise a fact issue on notice. It relies on *Barker v. UHS of Texoma, Inc.*, No. 4:18-CV-502, 2019 WL 2358923 (E.D. Tex. June 4, 2019) (mem. op.).

In *Barker*, an employee sued her employer, Texoma, for violating the Age Discrimination in Employment Act, the Americans with Disabilities Act, and the Family and Medical Leave Act. *Id.* at *1. Texoma moved to compel arbitration. *Id.*

13

The parties disputed whether the Barker received proper notice of the arbitration agreement, which Texoma implemented during the course of her employment. *Id.* at *2. Texoma required its employees to complete a course titled "Alternative Resolution of Conflicts," which informed employees of the arbitration agreement and their right to opt out in writing. *Id.* Although Barker denied receiving the agreement or taking the course, Texoma presented evidence showing that all employees had to complete the Alternative Resolution of Conflicts online course, that the course informs users of the new arbitration agreement and their right to opt out in writing, and that Barker completed the course. *Id.* Texoma also provided a document outlining each step in the course that Barker completed and a certificate of completion with Barker's name on it. *Id.* This certificate would issue only if, on completing the course, Barker "acknowledged [that] this course contains the ARC Program materials" and that she "had an opportunity to review them." *Id.*

The court held that Barker's sworn denial could not create a fact issue on notice and that Texoma established the validity of the arbitration agreement by a preponderance of the evidence. *Id.* at *3. The court reasoned that trial courts may resolve factual disputes when parties present competing evidence, and it resolved the dispute in favor of Texoma. *Id.* ("In this case, the Court finds Texoma Medical's records and its employees' detailed affidavits on those records more reliable than Barker's dated recollection.").

14

Johnson, on the other hand, cites two cases in which the trial courts addressed whether an employee's denial created a fact issue to defeat compelling arbitration based on the lack of notice. In *Kmart Stores of Tex., L.L.C. v. Ramirez*, 510 S.W.3d 559 (Tex. App.—El Paso 2016, pet. denied), an employer sought to compel arbitration under an agreement which it claimed its employee had electronically reviewed and consented to through an online portal the employer provided. *Id.* at 562–63. The employee denied under oath that she had ever acknowledged or agreed to the purported arbitration agreement. *Id*. The employer produced an affidavit from a compliance programs manager stating that the electronic system showed that the employee had created an "Arbitration Policy/Agreement Course" under her login credentials and that the employee had electronically acknowledged receipt of it. *Id*. The trial court held a hearing on the motion to compel arbitration and denied the motion. *Id*. at 563–64.

On appeal, the question before the court was whether the evidence established that both parties assented to arbitrate claims under the agreement. *Id*. at 564. The court deferred to the trial court's factual findings and held that the employee's sworn denial of notice was sufficient to create a genuine fact issue, even though the employer's electronic records showed her unique login credentials were used to access and acknowledge the agreement on the online portal. *Id*. at 571. Because the trial court held a hearing on the employer's motion to compel, the appellate court

15

deferred to the trial court's factual determinations of the parties' competing evidence, reasoning that "the trial judge was free to believe whichever it thought was more persuasive." *Id*. at 569–71 ("Notice is a fact question, and ultimately, this case boils down to which version of facts the trial court credits."). The court also noted that the employer failed to cite "any authority requiring the courts to give credence to an employer's electronic records over an employee's testimony in arbitration determinations." *Id*.

The second case Johnson cites is *Gunda Corp., LLC v. Yazhari*, No. 14-12-00263-CV, 2013 WL 440577 (Tex. App.—Houston [14th Dist.] Feb. 5, 2013, no pet.) (mem. op.). In *Gunda*, an employer presented a copy of an arbitration agreement purportedly signed by its employee, whom the employer was seeking to compel into arbitration. *Id*. at *4. The trial court held a non-evidentiary hearing and denied the employer's motion to compel arbitration. *Id*. at *2.

On appeal, the court reviewed the record evidence presented by each party. *Id*. at *2–4.The employer's evidence included signed acknowledgments that the employee read and understood certain policies and a copy of the arbitration agreement bearing employee's signature. *Id*. at *3. The record also included an affidavit, asserting that the employee signed and returned documents containing the arbitration agreement. *Id*. The employee, on the other hand, informed the court that the employer never produced the original arbitration agreement signed by him and

16

presented an affidavit denying ever having seen or signed the arbitration agreement. *Id*. at \*9–10. The appellate court determined that the evidence did not establish an agreement to arbitrate claims and thus "the evidence raised a fact issue regarding the formation of an agreement to arbitrate . . . ." *Id.* at \*4.

Although these cases are relevant and persuasive, we note a significant difference between those cases and the case before us: The trial court held no hearing on CHG-Bellaire's motion to compel arbitration. Although a hearing is not required before the trial court determines whether to compel arbitration, we must review the parties' competing affidavits, pleadings, discovery, and stipulations to determine whether the trial court's ruling is supported by the evidence. *See In re Jim Walter Homes*, 207 S.W.3d at 896; *Webster*, 128 S.W.3d at 233.

After reviewing the competing evidence here, we cannot say that the trial court acted in "an arbitrary or unreasonable manner, without reference to any guiding rules or principles." *In re Nitla S.A. de C.V.*, 92 S.W.3d at 422. We note that CHG-Bellaire explicitly asked whether Johnson *recalled* viewing the agreement. It did not ask, however, whether she had executed or electronically signed the agreement. Nor did it properly impeach Johnson's testimony. Johnson disputed reviewing the EIBP arbitration acknowledgment. The trial court could have reasonably believed that Johnson had no notice of the arbitration agreement based on her sworn testimony, even though CHG-Bellaire presented documents showing

17

that she had acknowledged them. *See, e.g.*, *Big Bass Towing Co. v. Akin*, 409 S.W.3d 835, 842 (Tex. App.—Dallas 2013, no pet.) ("The fact that a document was "available" for inspection does not demonstrate that Akin had notice of the document."). We therefore conclude that the trial court did not abuse its discretion. *See Austin*, 417 S.W.3d at 207.

Because CHG-Bellaire failed to carry its burden of establishing a valid, enforceable arbitration agreement, we need not determine whether it carried its burden of establishing that Johnson's claims asserted fell within the scope of the agreement. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

## Conclusion

We affirm the trial court's order.


Sarah Beth Landau
Justice

Panel consists of Justices Goodman, Landau, and Guerra.

18